**In re CAPITAL CITIES/ABC, INC.'S APPLICATION FOR ACCESS TO SEALED TRANSCRIPTS.**

**Appeal of CAPITAL CITIES/ABC, INC.**

**No. 90–5039.**

United States Court of Appeals, Third Circuit.

Argued May 30, 1990.

Decided Aug. 23, 1990.

Burt M. Rublin (argued), Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., Thomas D. Caldwell, Jr., Caldwell & Kearns, Harrisburg, Pa., for appellant.

James J. West (argued), Office of the U.S. Atty., Harrisburg, Pa., for appellee U.S.

Before HUTCHINSON, COWEN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Capital Cities/ABC, Inc. (Capital Cities) appeals from a final order of the United States District Court for the Middle District of Pennsylvania denying its application for access to three sealed documents.

The documents, two transcripts of chambers and sidebar conferences during a criminal trial and the stenographer's notes of those conferences, concern the involvement of one of the witnesses at trial in an on-going federal grand jury investigation unrelated to the matter about which he testified. They were among sealed portions of the record before this Court.

The district court sealed these documents during the criminal trial on its own motion. Although Capital Cities applied for access to the documents after the criminal trial had ended, the district court denied the application without a hearing because it concluded that the documents contained extremely sensitive information that should be kept private. Specifically, the district court found that the sealed documents contained previously undisclosed information that a government witness was a target of a grand jury investigation. As a result, the district court held that the grave risk of serious injury to the witness from disclosure of his target status compelled denial of Capital Cities' motion seeking access to the documents.[1]

In its appeal, Capital Cities maintains that it has both a common law and a constitutional right of access to the sealed documents. We are unable to make that determination in the first instance on this record. Therefore, we will vacate the district court's order denying Capital Cities' motion for access and remand this matter for further proceedings consistent with this opinion.

## I.

On October 25, 1989, Capital Cities applied for access to items that comprised thirteen sealed docket entries in the consolidated criminal trials of *United States v.*

---

**1.** The witness whose privacy interests are said to be affected is not named as a party to this appeal. His interests are asserted instead by the government. We have suggested the government can assert individual privacy interests in attempting to meet its burden of demonstrating the compelling interest that justifies denial of a media organization's First Amendment right to access to court records. *See United States v. Smith*, 776 F.2d 1104, 1112–13 (3d Cir.1985)

(*Smith I*) (individual's reputational or privacy interest may rise to level of compelling government interest sufficient to defeat media organization's right of access). Perhaps because of the chaotic procedure inherent in protecting the media's right of access to sealed judicial records, the record before us is unclear as to whether the witness was ever advised of this proceeding.

*Kenneth R. Reeher,* No. CR–89–00066–01, and *United States v. Harry P. Casoni,* No. CR–89–00066–02, in the United States District Court for the Middle District of Pennsylvania. The two defendants were officials of the Pennsylvania Higher Education Assistance Agency who were charged with several counts involving criminal conduct, including conspiracy, extortion, bribery, interstate travel in aid of racketeering and mail fraud. Their trials ended on September 27, 1989, when the jury returned a verdict acquitting Reeher of all charges and convicting Casoni on eight of twelve counts.

In its application for access to the sealed documents, Capital Cities requested a hearing, citing this Court's decision in *United States v. Raffoul,* 826 F.2d 218 (3d Cir. 1987). *See* Appellant's Appendix (App.) at 30a. On October 31, 1989, the district court held a chambers conference with counsel for Capital Cities to discuss the most appropriate way to proceed with the application. At the chambers conference, the district court indicated that it was inclined to unseal all but three documents if the government had no objection. The government agreed that all but three documents could be unsealed. The district court entered an order on November 7, 1989, unsealing the ten documents whose publication was not objectionable to the government.

Capital Cities continued to seek access to the three remaining sealed documents, which contained transcripts and notes of two chambers and sidebar conferences held on August 25, 1989.[2] In the sealed conferences, the district court ruled that the defendants in the underlying criminal trial would not be allowed to impeach one of the prosecution's witnesses by cross-examining him about the fact that he was targeted by a grand jury investigating drug use among high-ranking Pennsylvania government officials.

At the first sealed conference, which took place on the morning of August 25, 1989, the district court revealed that the government had made an *in camera* submission of certain material that was possibly subject to discovery by the defendants under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). After considering the government's *in camera* submission, the district court determined that the witness's status as a grand jury target in an investigation unrelated to the Reeher/Casoni matter bore no factual relationship to the matter at hand and could not be considered exculpatory within the meaning of *Brady.* It also determined that the government had no duty to reveal this information to the defendants for cross-examination purposes, because the information could not properly be used to impeach the witness.

At the completion of the first conference, the district court instructed counsel for Reeher and Casoni that they could not cross-examine the witness concerning the pending grand jury investigation. Furthermore, because of the extremely sensitive nature of this information and the high probability that neither defendant had any knowledge of the information before the chambers conference, the district court *sua sponte* ordered that the transcript of the conference be sealed and directed counsel for all parties not to reveal its contents to anyone.

In a sidebar conference before the afternoon session on the same day, counsel for Reeher presented the district court with a case, *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), that he thought might change its ruling on the proper scope of the witness's cross-examination. The district court concluded that *Davis* was distinguishable from the matter at hand and declined to change its earlier ruling. Afterward, the district court ordered that the contents of the afternoon

---

**2.** The three remaining sealed documents to which Capital Cities seeks access are entry numbers 104, 106 and 107 on the docket sheet of the underlying criminal matter. *See* App. at 16a. However, as the docket sheet indicates, entry number 104 is simply the court reporter's un-transcribed notes of two chambers and sidebar conferences held on August 25, 1989. These notes have been transcribed and entered separately on the docket sheet as entry numbers 106 and 107.

sidebar conference also be sealed and directed all counsel not to discuss the matter with anyone.

On December 11, 1989, the district court issued under seal a final order and memorandum opinion denying Capital Cities' application for access to the three sealed documents. The district court prohibited the opinion's release to both the general public and to the parties until further order. Capital Cities then appealed to this Court.

In this Court, Capital Cities also sought access to the district court's sealed memorandum opinion. Capital Cities moved to unseal the opinion or to be provided with a copy of it in order to prepare its brief on appeal. A motions panel of this Court directed the Clerk of the District Court to transmit the district court's opinion to the Clerk of this Court under seal to enable the motions panel to review the district court opinion before acting on Capital Cities' motion.

Before the motions panel acted on the merits of Capital Cities' motion to unseal the district court's opinion, the opinion's contents were disclosed to Capital Cities as the result of a miscommunication involving the District Court Clerk's Office. That office erroneously entered an order on the district court docket sheet stating that the district court had orally directed the unsealing of its memorandum opinion. Before the docket sheet could be corrected to show that the district court had not ordered the unsealing of the memorandum opinion, Capital Cities acquired a copy of the opinion.

## II.

Although Capital Cities has obtained the district court's sealed memorandum opinion in support of the order denying the application for access to the three sealed documents, Capital Cities still lacks access to the documents themselves. Accordingly, this case still presents a live controversy subject to the Article III judicial power to adjudge cases and controversies.

The district court had jurisdiction over Capital Cities' application pursuant to 28 U.S.C.A. § 1331 (West Supp.1990). We have appellate jurisdiction pursuant to 28 U.S.C.A. § 1291 (West Supp.1990). See Raffoul, 826 F.2d at 222 ("An order granting or denying access to portions of a trial record is appealable as a final order pursuant to 28 U.S.C. § 1291."); United States v. Smith, 787 F.2d 111, 113 (3d Cir.1986) (Smith II) (same).

■ With respect to Capital Cities' common law right of access to judicial proceedings, we review the district court's order for abuse of discretion. See Smith II, 787 F.2d at 113. However, to the extent that we consider Capital Cities' First Amendment right of access to criminal trial proceedings, we exercise substantially broader review. See id. at 113 n. 1. This broader review includes independent consideration of the district court's order and the factual findings inferred from the evidence before it. See Bose Corp. v. Consumers Union, 466 U.S. 485, 499, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 285, 84 S.Ct. 710, 728, 11 L.Ed.2d 686 (1964)) ("in cases raising First Amendment issues we have repeatedly held that an appellate court has an obligation to 'make an independent examination of the whole record' "); Smith II, 787 F.2d at 113 n. 1.

## III.

### A.

■ The government maintains that Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), is the case most relevant to our review of the district court's denial of Capital Cities' application. In Seattle Times, the Supreme Court held that a protective order, issued upon a showing of "good cause," that limited the parties' ability to disseminate information gained through pretrial civil discovery did not offend the First Amendment since it furthered an important and substantial government interest in liberal pretrial discovery unrelated to the suppression of expression and was tailored to limit First Amendment freedoms no more than necessary to protect that government interest.

*See id.* at 37, 104 S.Ct. at 2209. Furthermore, the Court recognized that the unique character of the civil discovery process, where parties are given access to material that would normally be inaccessible, meant that limits on the dissemination of discovered material implicated the parties' First Amendment rights to a far lesser degree than would dissemination limitations in other situations. *See id.* at 33, 104 S.Ct. at 2207. Because "pretrial depositions and interrogatories are not public components of a civil trial," *id., Seattle Times* gives district courts wide latitude to fashion protective orders during pretrial civil discovery.

On this analysis, the government suggests that the district court should be afforded similar latitude to protect the contents of certain chambers and sidebar conferences by sealing the transcripts of those conferences. The government argues that the material central to the discussions during those two conferences, showing that a government witness was the subject of a grand jury investigation, was generated during pretrial discovery and was presented to the district court *in camera* for a *Brady* ruling, so it should be treated similarly to the pretrial discovery involved in *Seattle Times.* Since pretrial discovery proceedings "were not open to the public at common law ... and, in general, they are conducted in private as a matter of modern practice," *id.,* the government argues that the district court should be allowed to keep the material involving the witness away from the public.

The government's reliance on *Seattle Times* is not persuasive. Capital Cities is not seeking access to the pretrial material submitted *in camera* to the district court. As Capital Cities explains clearly, *see* Appellant's Reply Brief at 2 n. 1, it is applying only for access to the transcripts and untranscribed notes of two chambers and sidebar conferences held during the Reeher and Casoni criminal trial. This material historically has been presumed to be available for public review at some point. *See Smith II,* 787 F.2d at 114. As *United States v. Smith,* 776 F.2d 1104, 1111 (3d Cir.1985) (*Smith I*), made clear, *Seattle*

*Times'* good cause standard does not control when a court is faced with a denial of access to criminal trial proceedings and records.

Instead, we think that *Smith I* and *Smith II* are central to our review of the district court's decision to deny Capital Cities' application for access to the sealed documents.

In *Smith I,* several newspapers filed motions in the district court seeking access to a bill of particulars containing the names of unindicted co-conspirators after the indicted defendants had requested the same document. The indicted defendants had been given the document subject to a protective order prohibiting them from revealing the contents of the bill of particulars to others. The government and one of the defendants opposed the newspapers' requests. The government did not want the names of the unindicted co-conspirators, some of whom were Pennsylvania state elected officials and public employees, released because they were still under active investigation by the FBI and a federal grand jury and information about who was under investigation was not currently in the public domain. The government believed that the adverse publicity generated by revealing these names would cause unnecessary embarrassment to the individuals involved and could cause them to be stigmatized in the community. *See* 776 F.2d at 1106–07.

This Court held that a bill of particulars should be treated the same as other charging documents since it can be viewed as a supplement to an indictment. *Id.* at 1111. Reasoning that a bill of particulars should not be analogized to material involved in the discovery process, we held that *Seattle Times* was inapposite. *Id.* Instead, we concluded that the newspapers' right of access to the bill of particulars should be viewed within the historical tradition of public access to all charging documents absent an overriding need for secrecy. Because the First Amendment was involved, we recognized that the district court's decision to deny access to the bill of particulars could be upheld only if such action was " 'necessitated by a compelling governmen-

tal interest, and is narrowly tailored to serve that interest.' " *Smith I,* 776 F.2d at 1112 (quoting *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984), and *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982)).

This Court has noted that an individual's privacy or reputational interests may, in some circumstances, rise to the level of a compelling governmental interest and defeat a media organization's constitutional right of access as well as the public's common law right of access to charging documents in a criminal proceeding. *See Smith I,* 776 F.2d at 1112–13. We concluded that *Smith I* presented just that very situation, since disclosure of the names contained in the bill of particulars would have almost certainly created a grave risk of serious injury to innocent third parties. More than mere embarrassment would have resulted from revealing the names of the unindicted co-conspirators, since the individuals' reputations and careers could have been irreparably harmed even though the grand jury ultimately may have decided not to indict them for any crime. *See id.* at 1113–14. We did not find convincing the newspapers' argument that some of the unindicted co-conspirators were state government officials and thus had a diminished right to privacy. *See id.* at 1114.

*Smith II* involved access to certain transcripts of sidebar conferences held during the criminal trial of a high-ranking Pennsylvania government official. The first sidebar conference occurred during the government's cross-examination of a defense witness, when it appeared that the government was going to try to impeach the witness by asking him whether he was a target in the same criminal investigation that led to the indictment of the defendants. During this sidebar conference, the district court sustained the defendants' objection to the proffered impeachment of the witness. At two later sidebar conferences, the district court granted the defendants' motion to seal the transcript of the first

sidebar. Later, however, the district court vacated its order to seal. The two defendants and the witness then appealed to this Court.[3]

We emphasized at the beginning of our opinion in *Smith II* the general principle of openness in criminal trials. We recognized that a similar principle of openness should apply to evidentiary rulings made during sidebar conferences that could affect the course of the trial. *See* 787 F.2d at 114. Although there is often a good reason not to allow immediate access to certain sidebar and chambers conferences where substantive rulings are made, we concluded in *Smith II* that "[a]t some stage, and we need not in this case decide precisely when, that ruling must be available for public review so that the purposes of open trials can be satisfied." *Id.* This is because "[a] sidebar conference at which a question to a witness was proffered and an objection sustained is an integral part of a criminal trial." *Id.* Thus, *Smith II* held that "the common law right of access to judicial records ... is fully applicable to transcripts of sidebar or chambers conferences in criminal cases at which evidentiary or other substantive rulings have been made." *Id.* at 115.

We also concluded in *Smith II* that the witness had not shown a compelling governmental interest that would support a denial of access to the contents of the sealed transcript of the sidebar conference. Although releasing the transcript would reveal that the witness was the target of a grand jury investigation, we concluded that such information was not subject to the grand jury secrecy requirement of Federal Rule of Criminal Procedure 6(e). The target letter was not generated by the grand jury process itself (which was subject to Rule 6(e)), but was merely an expression of opinion from a United States Attorney. Neither the target letter nor the sidebar conference revealed any grand jury information subject to the secrecy requirement of Rule 6(e). Thus, there was no compelling governmental interest to keep the con-

---

**3.** The two defendants later withdrew their appeals.

tents of the sidebar conference sealed. *See id.*

Our conclusion in *Smith II* was bolstered by the fact that the government's cross-examination question was proffered for a legitimate reason, not to " 'gratify private spite or promote public scandal.' " *Id.* (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978)). Furthermore, because the witness was a high-ranking official in a state political party and because his possible connection to the matters at issue had been made public through his testimony at trial, this Court concluded that his privacy interests were "substantially diminished." *Id.* at 116. Since *Smith II* involved only a "slight risk of embarrassment from disclosure," and not a grave risk of serious injury to an innocent party, we concluded that *Smith I* did not require a different result. *Id.* Therefore, in *Smith II*, we upheld the district judge's decision to unseal the transcripts of the sidebar conferences in which the government was prohibited from cross-examining a witness about his grand jury target status.

### B.

In the appeal presently before us, the district court properly attempted to undertake the analysis of interests that our opinions in *Smith I* and *Smith II* require. However, for two closely related reasons, Capital Cities was at a severe disadvantage in trying to show that its First Amendment and common law rights of access to criminal trial proceedings, which include a right of access to transcripts of sidebar and chambers conferences, overcame the government's interest in preventing the infliction of unnecessary and intensified pain on third parties.

First, at the time of its application to unseal the documents that are the subject of this appeal, Capital Cities had absolutely no information concerning their particular subject matter. Thus, Capital Cities was unable to advance anything but the most general arguments concerning its First Amendment and common law rights to ac-

cess criminal proceedings. Capital Cities had no information concerning the government interests that would enter into the *Smith I* and *Smith II* analysis, and so it could not directly rebut the reasons that led the district court to seal the three documents.

Second, the district court denied Capital Cities the hearing it requested pursuant to *United States v. Raffoul*, 826 F.2d 218 (3d Cir.1987). In *Raffoul*, we stated that "interested members of the press and public must be permitted a hearing within a reasonable time in order to move for access to sealed transcripts of a closed proceeding." *Id.* at 225.

On the authority of *Raffoul*, the district court should have given Capital Cities a hearing on its motion. We must agree with Capital Cities that the chambers conference held on October 31 did not satisfy the district court's duty under *Raffoul* to hold an open hearing concerning whether to grant access to the sealed documents. While we cannot tell how Capital Cities might have utilized a *Raffoul* hearing to buttress its contention that it had a right to access the sealed documents and to make a more focused argument concerning the *Smith I* and *Smith II* test, *Raffoul* stands for the proposition that where the press or public requests an open hearing, one "must" be held. *See* 826 F.2d at 225.

At such a hearing Capital Cities or the district court could have elicited on the record from the sole party to this appeal familiar with the contents of the three sealed documents, the government, whether it knew of any press reports that disclosed the subject of the sealed transcripts. Then, the district court could have made any such reports part of the factual record upon which it could determine whether Capital Cities had a right to access the sealed documents. Indeed, as we discuss below, the determination of whether the witness's involvement with the unrelated, on-going grand jury investigation has been the subject of public comment is essential to the resolution of the issue before the district court and to our review of its decision on Capital Cities' right of access.

## C.

█ Despite being denied a *Raffoul* hearing on its application for access and having no information initially on the subject matter of the sealed documents, Capital Cities has been helped in its presentation before us by the access it gained to the district court's sealed memorandum opinion through the miscommunication in the District Court Clerk's Office after Capital Cities filed its notice of appeal. Having some information on the subject matter of the sealed conferences has allowed Capital Cities to focus more sharply on the interests involved in an analysis under *Smith I* and *Smith II*. However, some difficulties remain.

Despite the fact that no evidence was presented to the district court on the existence or extent of any prior publicity concerning the witness's involvement in the grand jury proceedings, in its appendix Capital Cities has attempted to place before us a number of newspaper articles and wire service releases that were not a part of the district court record. Capital Cities argues that these extra-record items show that the government and the witness who was the beneficiary of the district court's sealing order have a diminished privacy interest in the contents of the sealed transcripts that is insufficient to defeat Capital Cities' First Amendment and common law rights of access.

█ This Court has said on numerous occasions that it cannot consider material on appeal that is outside of the district court record. *See Bass v. Attardi*, 868 F.2d 45, 51 (3d Cir.1989) (per curiam); *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1165 (3d Cir.1986) ("The only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court."), *cert. denied*, 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987); *Landy v. Federal Deposit Ins. Corp.*, 486 F.2d 139, 150 (3d Cir.1973) ("the court of appeals will consider only the record and facts considered in the district court"), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974).

Furthermore, by including in its appendix a number of items that were not part of the district court record, Capital Cities has violated the command of several provisions of the Federal Rules of Appellate Procedure. Rule 10(a) states that the record on appeal is composed of:

> The original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the district court. . . .

Fed.R.App.P. 10(a). Federal Rule of Appellate Procedure 30, entitled "Appendix to the Briefs," limits the contents of a party's appendix to that which is contained in the record before the district court.

Moreover, we are unable to consider in the first instance any of the material that Capital Cities has included in its appendix that was not part of the district court record. In *Sewak v. INS*, 900 F.2d 667, 673 (3d Cir.1990), we stated that "[a]s an appellate court we do not take testimony, hear evidence or determine disputed facts in the first instance. Instead, we rely upon a record developed in those fora that do take evidence and find facts." *See also United States ex rel. Mulvaney v. Rush*, 487 F.2d 684, 687 (3d Cir.1973) ("We are not a fact-finding body. We are entitled to have the judgment of the district court both as to findings of fact and conclusions of law . . . .").

We have, however, independently examined whether it is proper for us to open the record on appeal to include the extra-record items that Capital Cities supplied in its appendix, even though Capital Cities failed to file a formal motion to supplement the record. In making that examination, we have considered both Federal Rule of Appellate Procedure 10(e) and any inherent equitable power we may have to supplement the record on appeal.

Rule 10(e) states, in relevant part:

> If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the district court either before or after the record is transmitted to the court of appeals, or the court of

appeals, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted.

Fed.R.App.P. 10(e).

We have more often than not construed Rule 10(e) to prohibit this Court from adding to the record anything that the district court has not considered. *See Bass,* 868 F.2d at 52 & n. 15 (instead of employing Rule 10(e), we remanded the case to the district court so that a party could add to the record there); *Fassett,* 807 F.2d at 1165 (quoting 9 J. Moore, Moore's Federal Practice ¶ 210.08(1), at 10–55 (2d ed. 1985)) (neither district court nor this Court could use Rule 10(e) " 'to add to the record on appeal matters that did not occur [before the district court] in the course of proceedings leading to the judgment under review' "); *Rush,* 487 F.2d at 687 ("Rule 10(e) is apparently intended to 'supplement' a record, not to supply in substance a large new record never before the District Court and never considered by it.").

However, on occasion, and without citation to the conflicting authority cited above, we have employed Rule 10(e) to add to the record material not first presented to the district court. *See Castle v. Cohen,* 840 F.2d 173, 180 n. 12 (3d Cir.1988) (employing Rule 10(e) to add to record item that district court had not considered and remanding for district court to decide admissibility and effect of new evidence); *Denicola v. G.C. Murphy Co.,* 562 F.2d 889, 894 n. 8 (3d Cir.1977) (using Rule 10(e) to add to record document district court apparently did not consider).

Our research has disclosed that just one of our sister circuits, the United States Court of Appeals for the Second Circuit, has utilized Rule 10(e) to allow for the supplementation of the record on appeal to include material that the district court did not consider. *See United States v. Aulet,* 618 F.2d 182, 185–87 (2d Cir.1980). The Seventh, Ninth and Eleventh Circuits have refused to employ Rule 10(e) to add to the record on appeal material that the district court did not consider. *See Ross v. Kemp,*

785 F.2d 1467, 1474 n. 12, 1476 n. 16 (11th Cir.1986); *United States v. Walker,* 601 F.2d 1051, 1054 (9th Cir.1979) ("Rule 10(e) cannot be used to add to or enlarge the record on appeal to include material which was not before the district court."); *Borden, Inc. v. FTC,* 495 F.2d 785, 788 (7th Cir.1974) ("Rule 10(e) does not give this court authority to admit on appeal any document which was not made a part of the record in the district court.").

A number of courts of appeals have referred to an inherent equitable power to supplement the record on appeal to include information not presented to the district court. *See, e.g., Ross,* 785 F.2d at 1474–76; *Turk v. United States,* 429 F.2d 1327, 1329 (8th Cir.1970). These courts have concluded that this inherent power exceeds the power that Federal Rule of Appellate Procedure 10(e) provides. *See, e.g., Ross,* 785 F.2d at 1474 n. 12.

The Eleventh Circuit explained in *Ross, id.* at 1474–75, that it would exercise its inherent equitable power to supplement the record on a case-by-case basis by focusing upon three factors. These factors are: (1) whether the proffered addition would establish beyond any doubt the proper resolution of the pending issue; (2) whether remanding the case to the district court for consideration of the additional material would be contrary to the interests of justice and the efficient use of judicial resources; and (3) whether the appeal arose in the context of a *habeas corpus* action. However, the court wrote in *Ross* that it would generally refuse to supplement the record when, as in the case presently before us, "a party has filed supplemental material without requesting leave of th[e] court or has appended material to an appellate brief without filing a motion to supplement." *See id.* at 1475.

We need not decide in this case whether such inherent equitable power does exist. Capital Cities has not sought leave to supplement the record on appeal. Furthermore, even if we were to allow supplementation now, we would be unable, for the reasons already explained, to find the necessary facts concerning whether the

government's and the witness's expectations of privacy have diminished to the point that Capital Cities' First Amendment and common law rights of access demand the unsealing of the three items. Thus, on balance, we refuse to exercise either Rule 10(e) or any inherent equitable power that may be available to supplement the record to include the extra-record items that Capital Cities included in its appendix and as an addendum to its reply brief.

### D.

Because Capital Cities was incorrectly denied a *Raffoul* hearing and because it improperly tried to present us with the extra-record press reports that the district court should consider in the first instance, a remand is necessary. On remand, the district court must provide Capital Cities with a hearing as mandated in *Raffoul.* Furthermore, on remand, the district court should give Capital Cities an opportunity to present the items that it inappropriately included in its appendix on appeal along with any other evidence it may have showing that the government's or the witness's privacy interests have been compromised. Of course, the government will then have the opportunity to challenge the admission of any of this evidence. Giving Capital Cities the opportunity to present such items is fully consistent with our decision in *Raffoul.* There, we "vacate[d] the order of the district court and remand[ed] for a hearing on whether there *still exists* adequate reason to deny access to the sealed transcripts." 826 F.2d at 221 (emphasis added). In addition, on remand it may be that the district court will wish to give the witness notice and an opportunity to be heard on the issue, if he has not already had such an opportunity.

Under the holdings of *Smith I* and *Smith II,* a finding that the subject of the sealed documents is private is a prerequisite to determining that a media organization should be denied access to part of a criminal proceeding. If press reports are offered and admitted into evidence showing that the witness's involvement in a grand jury investigation has already been published in full detail, the district court would

presumably conclude on remand that the subject of the sealed documents is no longer private. If the district court reaches such a conclusion, based upon reports in the press both before and after its original decision refusing to unseal the documents, it might not have to address the *Smith I* and *Smith II* factors but instead could direct the immediate unsealing of these documents.

In the event that the district court, in the face of any press reports that Capital Cities seeks to add to the record, finds that the government or the witness retains a privacy interest in the subject matter of the sealed documents, the district court should specifically address the *Smith I* and *Smith II* factors in light of the newly expanded record upon remand. The district court should then decide whether Capital Cities' strong right of access defeats the government's and the witness's remaining privacy interests in the subject matter of the sealed documents.

In light of the press's and the public's strong interest in a speedy resolution of this matter, we feel confident that the district court will promptly convene the required *Raffoul* hearing, give Capital Cities an opportunity to present relevant evidence on the privacy issue, and then expeditiously rule upon this case in its new posture.

### IV.

In summary, we will vacate the district court's order denying Capital Cities access to the material reflected in the three sealed docket entries and will remand this matter for further proceedings in accordance with this opinion. On remand, the district court is directed to convene the necessary *Raffoul* hearing, to give Capital Cities an opportunity to introduce into the record news reports pertinent to the privacy interests of the subject of the sealed material and to render a prompt decision on whether the material that the three district court docket entries represent should continue to be sealed.