

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-26-2002

# Greco v. Mt Carmel Sch Dist

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3970

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Greco v. Mt Carmel Sch Dist" (2002). *2002 Decisions.* Paper 536.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/536

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


NO. 01-3970


*DON FILIPPO SCICCHITANO,
CATERINA ANNA SCICCHITANO, by and through their
parents and natural guardians Carmine Scicchitano and
Maria Scicchitano; SAMANTHA JO STANCAVAGE,
by and through her parent and natural guardian Michael Stancavage,
Appellants


v.


MT. CARMEL AREA SCHOOL BOARD


*(Amended per Clerk's 1/9/02 Order)


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 00-cv-01900)
District Judge:  Hon. Malcolm Muir


Argued July 22, 2002

Before:  SLOVITER, NYGAARD, and BARRY, Circuit Judges

(Filed  August 26, 2002)


Richard Bateman, Jr.     (Argued)
Devon, PA 19333

    Attorney for Appellants Michele J. Thorp     (Argued)
Thomas, Thomas & Hafer, LLP
Harrisburg, PA 17108-0999

    Attorney for Appellee


OPINION OF THE COURT


SLOVITER, Circuit Judge.

    Appellants, Don Filippo and Caterina Anna Scicchitano, by and through their
parents and natural guardians, Carmine and Maria Scicchitano, and Samantha Jo
Stancavage, by and through her parent and natural guardian, Michael Stancavage, sued
the Mount Carmel Area School District alleging that the District's new dress code
violated their rights under the First Amendment and the Equal Protection Clause of the
Fourteenth Amendment.  The District Court granted summary judgment in favor of the
School District on all issues except a First Amendment issue related to clothing
displaying the protest slogan:  "Followers wear uniforms, leaders don't."  At a bench trial
in October 2001, the District Court found in favor of the School District, concluding that

the slogan would create a substantial disruption and/or interference with the work of the school and the rights of the other students, and consequently denied the plaintiffs' request for injunctive relief and attorney's fees. We will vacate the judgment for lack of standing.                                                    I.

BACKGROUND

On June 27, 2000, the School District, pursuant to state authority giving school districts the option to impose dress codes, 24 Pa. Stat. Ann. 13-1317.3 (2002), adopted a dress code that would apply to students in kindergarten through sixth grade beginning that fall and to the entire school district in the following year. The dress code limits the students to certain solid colors for tops and bottoms, specifically, khaki, dark navy, or black for pants and shorts, and red, white, or blue for shirts. Under the policy, shirts may feature the school slogan. The dress code provides that students may apply for a waiver from the dress code based on religious beliefs or economic hardship.

On September 14, 2000, Don Filippo Scicchitano wore a slogan on his shirt that read, "Followers wear uniforms, leaders don't." The slogan was approximately two inches long and no more than one inch high, and appeared on the upper right-hand side of Don Filippo's shirt. School officials decided that the slogan was offensive to other students because it demeaned students who complied with the dress code and suggested that those students were incapable of possessing leadership qualities. The school principal testified that some students came up to her in the hallway to ask why Don Filippo was "allowed to wear that" slogan, but that they did not formally come to her office to complain about the challenged slogan nor, to her knowledge, did they complain to any teachers. App. at 706. The School District's witnesses conceded that there had been no disruption arising from the challenged slogan. However, School officials took Don Filippo out of his regular classroom, placed him in the student support room for the rest of the day, and contacted his parents. Don Filippo wore the slogan again several days later and committed various other dress code violations on other days. Neither Caterina Anna Scicchitano nor Samantha Jo Stancavage was ever disciplined for wearing the "Followers" slogan. No evidence was presented that Samantha attempted or desired to wear the "Followers" slogan.

The School District eventually banned this slogan but allowed students, including the appellants, to wear other slogans that protested the dress code. School officials concluded that these other slogans were not offensive to other students or likely to cause a disruption in school because they were directed to the school administration and not to other students. There appears to have been no official communication that certain protest slogans were permitted, but in response to this court's questions at argument, counsel for the School District stated that the school did not sanction students for wearing these slogans. The protest slogans that were permitted by the school include the following:

I love MCA, I hate school uniforms.
God gave us the rainbow, Mount Carmel SD took that away.
I take the Fifth.
. . . you took away our clothes, what's next, our crayons?
A uniform is a terrible thing to wear.
A uniform is a lousy thing to wear.
Looking alike is absurd.
The MCA School Board voted and all I got was this lousy uniform.

App. at 113-14.

On October 27, 2000, the plaintiffs filed a complaint in this matter alleging violations of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. At the time, there were six student-plaintiffs. They filed for a temporary restraining order and preliminary injunction against the enforcement of the dress code. The District Court denied both requests. After the conclusion of discovery, the School District filed a motion for summary judgment. The District Court granted summary judgment as to all of the Equal Protection claims and all of the First Amendment claims except for the claim surrounding the propriety of prohibiting clothing bearing the slogan, "Followers wear uniforms, leaders don't." At a bench trial, the District Court found in favor of the School District.

The plaintiffs filed a timely Notice of Appeal as well as a Motion to Remove several plaintiffs, leaving only the two Scicchitano children and Samantha Jo Stancavage,

by and through their respective parents. Samantha has completed the sixth grade and the Scicchitano children are presently being home schooled. The District Court found that "[t]here was no evidence presented at trial that if the School District allowed students to wear the ["Followers"] logo Don Filippo Scicchitano [or] Caterina Anna Scicchitano . . . would decide to attend public school within the Mount Carmel Area School District." App. at 116. Plaintiffs' counsel did not contend that this finding was clearly erroneous.

## II.
## JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. 1331 and 1343(a)(3)-(4). We have appellate jurisdiction over the District Court's final order pursuant to 28 U.S.C. 1291.

We exercise plenary review over the District Court's interpretation of a constitutional issue. See United States v. Scarfo, 263 F.3d 80, 91 (3d Cir. 2001) (citing United States v. Antar, 38 F.3d 1348, 1356-57 (3d Cir. 1994)). In the First Amendment context, the reviewing court has a duty to engage in an independent review of the factual record and need not defer to the District Court's factual inferences. Id. In Scarfo, we noted that the "Supreme Court has emphasized an appellate court's obligation independently to examine the whole record to ensure 'that the judgment does not constitute a forbidden intrusion on the field of free expression.'" Id. (quoting Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 499 (1984) (quotation omitted)). See also Antar, 38 F.3d at 1357 (noting our broader scope of review of factual findings in First Amendment context than in other areas of law); In re Capital Cities/ABC, Inc. v. Application for Access to Sealed Transcripts, 913 F.3d 89, 92 (3d Cir. 1990) ("This broader review [when we consider First Amendment issues] includes independent consideration of the district court's order and the factual findings inferred from the evidence before it.") (citing Bose, 466 U.S. at 499).

## III.
## DISCUSSION

Although the complaint in this case raises serious questions about the School District's application of the dress code and its decision to allow the display of some protest slogans but not the "Followers" slogan, we cannot reach the merits of those questions. By the time this case reached trial, the plaintiffs sought only injunctive relief and attorneys' fees. Article III of the Constitution requires that a plaintiff retain a legal cognizable interest throughout the pendency of an action. Although the parties did not brief the issues of mootness and standing, we have an obligation to consider them sua sponte and do so now.

The Scicchitano children no longer attend school in the Mount Carmel School District and thus are no longer governed by the challenged dress code policy. Leaving a school district often moots a claim for injunctive relief against that district. See, e.g., Penderson v. La. St. Univ., 213 F.3d 858, 874-75 (5th Cir. 2000) (finding injunctive claims mooted by student's graduation); Fox v. Bd. of Trustees of the State Univ. of N.Y., 42 F.3d 135, 140 (2d Cir. 1994) (same). Although we have found that graduation from a school does not automatically render a case moot if the claims are "capable of repetition, yet evading review," that exception does not apply here. See Brody ex rel. Sugzdines v. Spang, 957 F.2d 1108, 1113-15 (3d Cir. 1992) (concluding that challenge to religious speech in a graduation ceremony was not moot because length of senior year was too short to complete litigation and the plaintiff-parents who had younger children would later confront the same barriers to religious speech). If the Scicchitano children were planning to return to the school system, we might be able to find that this claim was capable of repetition, but they never established in the record that they would return to the School District if they were permitted to wear this slogan. See App. at 1234, 1238 (indicating that they were being home schooled in protest of the entire dress code and at the direction of mental health professionals). Further, the Scicchitano children are not on the verge of graduating from the school district and thus, were they in school, enough time would remain for them to fully litigate this issue, unlike the students in Brody.

Samantha Jo Stancavage, who does remain within the School District, has not met her burden of showing an actual or imminent injury that would give her standing to pursue this claim. In order to have standing to seek injunctive relief, the plaintiff must show that (1) she is likely to suffer future injury, (2) she is likely to be injured by the defendant, and (3) the relief she seeks will likely prevent the injury from occurring. See

Roe v. Operation Rescue, 919 F.2d 857, 864 (3d Cir. 1990), 15 James Wm. Moore et al., Moore's Federal Practice, 101.61[b][6] (3d ed. 2002). In an action under the First Amendment, courts apply an expanded notion of standing. "[I]n the First Amendment context, '[l]itigants . . . are permitted to challenge a statute not because their own rights free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" Va. v. Am. Booksellers Ass'n, 484 U.S. 383, 392-93 (1984) (quoting Sec'y of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 956-57 (1984) (quotation omitted)).

As the District Court found, Samantha never wore a protest slogan, despite a failed attempt to iron one onto one of her shirts, and plaintiffs did not demonstrate that the slogan she tried to iron on was the challenged slogan. She never indicated that she wanted to wear the challenged slogan, nor was she disciplined by the school for wearing an article of clothing displaying any protest slogan (although she was disciplined for other dress code violations). The mere possibility of future injury does not satisfy the requirements of Article III. "In cases where a plaintiff seeks injunctive or declaratory relief only . . . standing will not lie if adjudication . . . rests upon contingent future eve that may not occur as anticipated or indeed may not occur at all." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 561 (3d Cir. 2002) (second ellipsis in original) (quotations omitted). Without evidence that Samantha wanted to wear this slogan and that she was deterred only by fear of sanction, she has not met the standing requirements of Article III.

Because these claims are not presently justiciable and were not at the time of trial, we cannot reach the interesting issue of whether the School District's policy violates the standard for regulation of student speech set forth in Tinker v. Des Moines Independent Community School District, 393 U.S. 503 (1969), nor are we able to reach the application of this court's recent decision in Saxe v. State College Area School District, 240 F.3d 200 (3d Cir. 2001).

IV.

CONCLUSION

Because the record evidence does not demonstrate that the plaintiff-appellants have met the requirements for standing or mootness, we will vacate the judgment of the District Court with direction to dismiss for lack of standing. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 235-36 (1990); Pub. Interest Research Group of N.J. v. Magnesium Elektron, 123 F.3d 111, 117 n.5 (3d Cir. 1997).

_____

TO THE CLERK:

Please file the foregoing opinion.


/s/ Dolores K. Sloviter
Circuit Judge