**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-1184
_____

MILL BRIDGE V, INC., as successor to VAN DER MOOLEN OPTIONS USA,
LLC c/o VAN DER MOOLEN SPECIALISTS, LLC,
Appellant

v.

I. ISABELLE BENTON; BENTON PARTNERS II, LLP; JAMES KENKELEN, a
transferee; EILEEN WHITE, a transferee
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court  No. 2-08-cv-02806
District Judge: The Honorable Ronald L. Buckwalter


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 10, 2012

Before: SMITH, CHAGARES, and ALDISERT, *Circuit Judges*

(Filed: September 13, 2012)

_____

OPINION
_____

SMITH, *Circuit Judge.*

Mill Bridge V, Inc. ("Mill Bridge")[1] filed suit against Defendants I. Isabelle Benton, Benton Partners II, LLP, James Kenkelen, and Eileen White (collectively, "Benton Partners"), for allegedly failing to disclose material non-public information about Philadelphia Stock Exchange, Inc. ("PHLX") before Benton Partners purchased Mill Bridge's shares in PHLX. Mill Bridge appeals from three orders from the District Court: (1) denying Mill Bridge additional discovery; (2) denying Mill Bridge a third opportunity to amend its complaint; and (3) granting Benton Partners' motion for summary judgment. For the following reasons, we will affirm.[2]

I.

In late 2004, Mill Bridge sought to liquidate its shares in PHLX. Mill Bridge specifically sought to sell its shares by December 31, 2004, in order to recognize a tax loss by the year's end. Mill Bridge approached PHLX to inquire about potential purchasers; PHLX informed Mill Bridge that Benton, a member of PHLX's Board of Directors, had recently expressed interest in purchasing additional shares of PHLX stock.

---

[1] Mill Bridge brings suit as the successor in interest to Van Der Moolen Options USA, LLC, c/o Van Der Moolen Specialists, LLC.

[2] Because Mill Bridge's complaint raised a federal question, the District Court had subject matter jurisdiction under 15 U.S.C. § 78aa and 28 U.S.C. § 1331. We have subject matter jurisdiction over this appeal under 28 U.S.C. § 1291.

On December 6, 2004, Mill Bridge contacted Benton to determine whether Benton Partners would be interested in immediately purchasing its shares in PHLX. Between December 7, 2004 and December 9, 2004, Mill Bridge and Benton Partners negotiated a price for the transaction. During these negotiations, Benton Partners did not disclose that PHLX was involved in merger negotiations with Archipelago Holdings, Inc. ("Arca"). On December 9, 2004, the parties reached an agreement whereby Mill Bridge would sell its 600 shares in PHLX to Benton Partners for $78,000, or $130 per share.

Unbeknownst to Mill Bridge, in November 2004, PHLX became aware that Arca was potentially interested in a merger. Near the end of November 2004, PHLX contacted Richard Breeden, a member of Arca's Board of Directors, to determine the extent of Arca's interest. Breeden spoke with Arca management and at some point between November 2004 and December 2004, Breeden informed PHLX that Arca was willing to begin merger negotiations.

Arca and PHLX began preliminary merger discussions over the telephone, focusing on general details about PHLX's business. On December 3, 2004, Arca and PHLX entered into a confidentiality agreement, whereby the parties agreed to keep confidential all non-public information divulged by the other party. As of December 9, 2004, when Mill Bridge sold its shares to Benton Partners, Arca had not conducted its official due diligence session with PHLX, which occured "in the

3

middle of December." App'x 8. On December 15, 2004, after the Mill Bridge-Benton Partners transaction was already finalized, PHLX's Board of Directors was finally informed of the possibility of a merger with Arca.

The merger negotiations began in full in 2005. In February 2005, PHLX formed a strategic committee to conduct negotiations. On April 18, 2005, Arca offered to purchase all of PHLX's stock for $50 million, at a price of approximately $900 per share—significantly higher than the price paid by Benton Partners for Mill Bridges' shares. PHLX rejected this offer. No merger ever took place.

On June 16, 2008, Mill Bridge filed suit in the Eastern District of Pennsylvania alleging, *inter alia*, that Benton Partners had violated § 10(b) of the Securities Exchange Act (the "Exchange Act"), 15 U.S.C. § 78aa, *et seq.*, had violated Rule 10b-5, 17 C.F.R. § 240.10b-5, and had exercised control person liability under § 20 of the Exchange Act, 15 U.S.C. § 78t. Specifically, they argued that, even though no merger ever took place, the ongoing merger negotiations between PHLX and Arca was material non-public information that would have affected the market value of Mill Bridge's shares in PHLX. That is, Mill Bridge argued that it would have negotiated a higher price for its shares in PHLX if it was aware of the negotiations.

After a lengthy procedural history during which Mill Bridge twice amended its complaint, discovery was set to close on June 15, 2010. Mill Bridge successfully petitioned the court to extend the close of discovery until July 15, 2010. On July 15, 2010, Mill Bridge again sought to extend the close of discovery. On July 28, 2010, the District Court denied this request.

Meanwhile, on July 16, 2010, Benton Partners filed a motion for summary judgment. The District Court granted Mill Bridge several extensions of time in which to respond to the motion. On August 13, 2010, when its response was due, Mill Bridge filed a motion to amend its complaint a third time, in order: (1) to add state law claims; (2) to change the date of the stock sale between itself and Benton Partners from December 1-2 to December 7-9, 2004; (3) to "sharpen the details" about the negotiations between Arca and PHLX; and (4) to include more allegations about Benton Partners' knowledge. On August 23, 2010, the District Court denied this request, concluding that Mill Bridge had not sufficiently justified the need for such a late amendment in the face of the undue burden that Mill Bridge's delay would place on the court.

The same day that Mill Bridge moved to amend its complaint, it filed another motion for an extension of time in which to respond to Benton Partners' motion for summary judgment. The court granted this motion. Finally, on August 30, 2010, Mill Bridge filed its response to the pending summary judgment motion.

5

On December 21, 2010, the District Court granted Benton Partners' motion for summary judgment. The court concluded that Mill Bridge had failed to show both that the alleged failure to disclose the potential merger was "material" within the meaning of § 10(b) and Rule 10b-5, and that Benton Partners knew this allegedly material information at the time of the purchase. Because the court dismissed Mill Bridge's claims under § 10(b) and Rule 10b-5, it also concluded that Benton Partners could not be subject to control person liability under § 20. Mill Bridge timely appealed.

## II.

Mill Bridge appeals, in part, from the District Court's orders denying it the opportunity to conduct additional discovery, and to file a third amended complaint.[3] We review both of these orders for an abuse of discretion. *See Mass.*

---

[3] Benton Partners has separately moved to limit the portion of Mill Bridge's appeal concerning the District Court's July 28, 2010 order denying Mill Bridge's request to extend the discovery deadline. Benton Partners notes that Mill Bridge's notice of appeal only specified that it was appealing from (1) the court's August 23, 2010 order denying Mill Bridge's request to amend its complaint; and (2) the court's December 21, 2010 order granting Benton Partners' motion for summary judgment. As Mill Bridge notes, however, we may exercise jurisdiction over orders not specifically identified in a notice of appeal where there is some "connection between the specified and unspecified orders[.]" *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 184 (3d Cir. 2010). Here, Mill Bridge claims that the same evidence disclosed at the close of discovery that motivated its attempt to amend its complaint justified its request for additional discovery. Under these particular facts, we will permit Mill Bridge to contest the District Court's July 28, 2010 order, even though it did not identify that order in its notice of appeal. We will therefore deny Benton Partners' motion to dismiss and limit this appeal.

*Sch. of Law at Andover, Inc. v. Am. Bar Assoc.*, 107 F.3d 1026, 1032 (3d Cir. 1997) (concerning a motion for additional discovery); *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) (concerning a motion for leave to file an amended complaint). Mill Bridge also appeals from the District Court's order granting Benton Partners' motion for summary judgment. We review *de novo*, applying the same legal standard as the District Court. *See Doe v. Luzerne Cnty.*, 660 F.3d 169, 174 (3d Cir. 2011).

First, the District Court did not abuse its discretion by denying Mill Bridge the opportunity to conduct additional discovery. Mill Bridge had a long period of time in which to conduct discovery. It chose, for its own reasons, to wait until the end of the discovery period to begin to request documents and conduct depositions. Moreover, the District Court previously *did* grant Mill Bridge additional time for discovery. The District Court did not abuse its discretion, given Mill Bridge's lack of diligence during discovery, and given that Mill Bridge had access to discovery and trial testimony from a related case arising out of the same incident.

Second, the District Court did not abuse its discretion by denying Mill Bridge the opportunity to amend its complaint for the third time. Delay in seeking to amend a complaint "may become undue when a movant has had previous opportunities to amend a complaint." *Cureton*, 252 F.3d at 273 (citation omitted). The District Court did not err when it concluded that the delay here was undue.

7

Mill Bridge had already amended its complaint twice, and did not persuasively explain why it could not have sought to amend its complaint any earlier.[4]

Finally, we agree with the District Court that the record before the District Court demonstrated as a matter of law that the merger negotiations between Arca and PHLX had not yet become material under the Supreme Court's test set forth in *Basic Inc. v. Levinson*, 485 U.S. 224, 239 (1988).[5] On December 9, 2004, when Mill Bridge and Benton Partners agreed to the stock sale, the negotiations between

---

[4] Although Mill Bridge now offers several reasons purportedly justifying its motion to amend, it presented the District Court with fewer and less convincing reasons, and included no details about the evidence it allegedly discovered. As Benton notes, this court will not reverse a district court's decision to deny leave to amend on a ground never presented to the district court. *See Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 272-73 (3d Cir. 2004).

[5] Benton Partners has moved to strike certain documents from the appendix on the basis that those documents were never filed before the District Court. Federal Rule of Appellate Procedure 10(a) defines the documents that are part of the record, and Rule 30(b) governs what documents can be included in an appendix. We agree with Benton Partners that the documents highlighted in its motion, spanning App'x 301-09, 314-15, 317, 319-22, 324-26, 330-34, 336-45, 347-63, 368-69, and 371-73 are not part of the record under Rule 10(a), and thus should not have been included in the appendix for our consideration.

We have recognized that in limited circumstances, we may have the equitable power under Federal Rule of Appellate Procedure 10(e) to allow a party to supplement the record with documents that were not presented to the District Court. *See In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 97 (3d Cir. 1990). Even if such a power did exist, equity would not permit supplementing the record in this instance, where Mill Bridge has failed to justify its failure to place these documents into the record before the District Court. Consequently, we will grant Benton Partners' motion to strike documents from the appendix. We nonetheless note that even if we considered these additional documents, we would reach the same result.

Arca and PHLX were only in their infancy. No reasonable juror could conclude otherwise. The evidence raised by Mill Bridge is insufficient to create a genuine issue of fact on this issue. The fact that a confidentiality agreement had been signed does not necessarily imply that the negotiations had progressed to the point where they were necessarily material—as the District Court noted, such agreements are "often entered into *at the outset* of the [merger] process before any material terms are negotiated." App'x 35 (emphasis in original).[6] Because the merger negotiations were still in their infancy, the fact of the negotiations does not constitute material information that Benton Partners was required to disclose prior to their transaction with Mill Bridge.

Further, we agree with the District Court that Mill Bridge has failed to show that Benton Partners knew of the ongoing merger negotiations at the time of the stock sale. The record suggests that the negotiations were announced to the Board of Directors on December 15, 2004, after Mill Bridge had agreed to the sale. We agree with the District Court that Mill Bridge's evidence, which consists primarily of some scattered inconsistencies and ambiguities in deposition transcripts, is insufficient to raise a genuine issue of fact as to Benton Partners' knowledge.

---

[6] Mill Bridge argues that various portions of deposition testimony are sufficient to raise a genuine issue of fact on the materiality of the merger negotiations. For the reasons outlined in the District Court's opinion, we agree that these efforts are unavailing. *See* App'x 27-35.

Because we conclude that Mill Bridge has failed to raise a genuine issue of fact as to whether Benton Partners failed to disclose material non-public information, or whether it knew of such information, we agree with the District Court that Mill Bridge's claims under § 10(b) and Rule 10b-5 fail as a matter of law. Further, because Mill Bridge has failed to assert "an independent violation of the federal securities laws," it cannot succeed on a claim for control person liability under § 20(a). *See In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 211 (3d Cir. 2002). Consequently, we will affirm the District Court's order granting Benton Partners' motion for summary judgment.

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.