**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1363
_____

VITO A. PELINO,
                                        Appellant

v.

JOHN E. WETZEL; ROBERT GILMORE; MICHAEL ZAKEN
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-20-cv-00326)
District Judge:  Honorable Arthur J. Schwab

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 1, 2022
Before:  RESTREPO, PHIPPS and COWEN,[*] Circuit Judges

(Opinion filed April 27, 2022)
_____

OPINION†
_____

---

[*] The Honorable Robert E. Cowen assumed inactive status on April 1, 2022, after the argument and conference in this case, but before the filing of the opinion.  This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and Third Circuit I.O.P. Chapter 12.

† This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Vito Pelino, an inmate proceeding pro se and in forma pauperis, appeals from the District Court's order dismissing his amended complaint. We will affirm the District Court's judgment.

I.

In March 2020, Pelino initiated this lawsuit against Pennsylvania Secretary of Corrections John Wetzel and the former superintendent of State Correctional Institution – Greene ("SCI-Greene"). The defendants moved to dismiss, after which Pelino filed the operative amended complaint, adding SCI-Greene's current superintendent and alleging that a prison mail policy, DC-ADM 803, violates his First and Fourteenth Amendment rights. Under the policy, which was implemented in 2018 after correctional staff were purportedly exposed to drug-soaked mail and became ill, incoming non-privileged mail is sent to a third party, Smart Communications, for electronic scanning, after which inmates receive a photocopy of their mail. According to Pelino, the policy permits storage of personal mail in an electronic database for seven years. Pelino sought an injunction against further implementation of DC-ADM 803, a declaratory judgment, and court costs.

The defendants moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). A Magistrate Judge recommended granting the motion, and, over Pelino's objections, the District Court adopted the recommendation and dismissed the amended complaint for failure to state a claim. Pelino timely appealed.

2

## II.

We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review over the dismissal order.  See Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012).  In reviewing dismissal under Rule 12(b)(6), we must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  Id.  As a pro se litigant, Pelino is entitled to liberal construction of his complaint.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

## III.

With respect to Pelino's First Amendment claim, "state prisoners, by virtue of their incarceration, do not forfeit their First Amendment right to use of the mails." Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006) (internal quotation marks and citation omitted).  In a case such as this, "our threshold task is to determine whether the . . . policy impinges on inmates' constitutional rights at all," and a plaintiff need not prove any "injury-in-fact beyond the infringement of constitutionally protected speech."  Id. at 358-59.  Here, Pelino alleged that DC-ADM 803 infringes upon his right of free speech by permitting the electronic storage of his non-legal mail by Smart Communications.  He has argued that he has a right to uncensored mail and that he is concerned that officials will read electronically stored copies of his mail at their leisure.  However, accepting Pelino's allegations as true, he failed to plausibly state a claim under the First Amendment.

We have noted that "censorship means altering or 'withold[ing] delivery of a particular letter,'" neither of which is contemplated by the policy at issue, and neither of

3

which Pelino has plausibly alleged occurred here.  See Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995) (citation omitted), abrogated on others grounds by Lewis v. Casey, 518 U.S. 343 (1996); see also Wolff v. McDonnell, 418 U.S. 539, 576 (1974) ("[F]reedom from censorship is not equivalent to freedom from inspection or perusal.").‡ Indeed, the provisions of DC-ADM 803 at issue—which the District Court properly considered because the policy was "referred to in [Pelino's] complaint and [is] central to [his] claim[s]," Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002) (citation and emphasis omitted)—contemplate only that inmates be provided photocopies of non-privileged mail rather than the originals, and Pelino has emphasized that he does not take issue with the copying of his mail in the first instance.

Moreover, although Pelino is concerned that officials will read his non-privileged incoming mail at their leisure, the policy—which Pelino challenges on its face—does not contemplate such activity.  Rather, it makes clear that officials are not permitted to read non-privileged mail unless their doing so is specifically authorized or otherwise directed by certain staff.§  We have indicated that such measures are not unconstitutional with

---

‡ Pelino contends that he did allege withholding of mail, but his arguments below, taken as true, at most indicate that delivery of his mail was delayed or potentially lost on two occasions.

§ Although Pelino argues that corrections officers may access his mail because copies of it are stored in an electronic "Incoming Mail Log," of which he attaches a copy to his reply brief, our review is limited to the record that was before the District Court.  See In re Cap. Cities/ABC, Inc.'s Application for Access to Sealed Transcripts, 913 F.2d 89, 96 (3d Cir. 1990).

respect to non-legal mail.  See Fontroy v. Beard, 559 F.3d 173, 174 (3d Cir. 2009) ("Although the DOC prohibits mail inspectors from reading mail addressed to inmates except in special circumstances, constitutional obligations require the DOC to take additional measures to ensure that *legal mail* remains unread." (emphasis added));[**] see also Jones, 461 F.3d at 359 (reasoning that a pattern or practice of opening legal mail outside the addressee's presence impinges on the right to free speech).  Further, even though the opening of non-legal mail creates a risk—like the one Pelino is concerned about here—that it will be read, courts of appeals have held that the First Amendment does not prohibit such activity.  See Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1211 (9th Cir. 2017); Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991); see also Mosby v. Mabry, 697 F.2d 213, 215 (8th Cir. 1982) (per curiam) (reasoning that "[t]he Supreme Court implicitly approved the opening of nonprivileged mail to inspect for contraband in" Wolff, 418 U.S. 539).[††]  In light of these considerations, Pelino's allegations—which at most demonstrate a remote possibility that correctional staff could read his non-

---

[**] In Fontroy, we concluded that a policy requiring that legal mail be marked with a control number or hand-delivered to be treated as privileged and opened in an inmate's presence did not violate the First Amendment.  See 559 F.3d at 174.  Under that policy, mail that did not satisfy either requirement would be treated as regular mail and opened at off-site facilities to be inspected for contraband.  Id.

[††] We note, further, that Pelino has not alleged that any prison official arbitrarily read his personal mail.  See Parrish v. Johnson, 800 F.2d 600, 604 (6th Cir. 1986) (reasoning that "[a] capricious interference with a prisoner's incoming mail based upon a guard's personal prejudices violates the First Amendment").

5

privileged mail because of the DOC's arrangement with Smart Communications—do not make out a plausible First Amendment violation.

As for Pelino's Fourteenth Amendment claim, prisoners retain a liberty interest in corresponding by mail, and this interest is constrained by censorship or rejection of inmates' mail. See Vogt v. Wetzel, 8 F.4th 182, 186 (3d Cir. 2021). Here, however, Pelino failed to plausibly allege that the policy at issue results in the censorship or rejection of mail. On appeal, Pelino speculates that his mail could be delivered to the wrong person and contends that other prisoners' mail has been misdelivered. But the mere possibility that Pelino's mail may be misdelivered is insufficient to state a violation of the due process clause, cf. Daniels v. Williams, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." (emphasis in original)), and Pelino lacks standing to assert the rights of other inmates, see Powers v. Ohio, 499 U.S. 400, 410-11 (1991) ("In the ordinary course, a litigant . . . cannot rest a claim to relief on the legal rights or interests of third parties."). Moreover, even assuming Pelino suffered a deprivation of due process, and even if the prison grievance process is, as Pelino argues, inadequate to remedy any deprivations that may occur, Pelino has an adequate remedy in state tort law for the loss or mis-delivery of his mail. See Hudson v. Palmer, 468 U.S.

6

517, 533 (1984); 42 Pa. Cons. Stat. § 8522(a), (b)(3).  The District Court therefore also properly dismissed Pelino's due process claim.[‡‡]

Finally, the District Court did not err in denying further leave to amend.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  In arguing that amendment would not be futile, Pelino raises new allegations that officials have withheld books pursuant to a provision of the Department of Corrections' mail policy pertaining to incoming publications.  These allegations are, however, outside the scope of this action and were not raised in the District Court, so we will not consider them.  See In re Reliant Energy Channelview LP, 594 F.3d 200, 209 (3d Cir. 2010).

Accordingly, we will affirm the judgment of the District Court dismissing Pelino's amended complaint.[§§]

---

[‡‡] Because Pelino has not shown that his rights have been violated, we do not consider whether the policy is constitutional under the test articulated in Turner v. Safley, 482 U.S. 78 (1987).  Pelino also argues that DC-ADM 803 violates § 115.97 of the U.S. Postal Service Domestic Mail Manual and that the District Court erred by failing to address this argument.  However, Pelino did not include this claim in his amended complaint, and even if he had, it appears that the provision on which Pelino relies is no longer in effect.

[§§] Pelino's motion for sanctions and to strike the Appellees' brief is denied, as is his motion to file a supplemental appendix and to expand the record.  Many of the documents Pelino seeks to include were not before the District Court, and we will not consider them for the first time on appeal.  See In re Cap. Cities/ABC, Inc.'s Application for Access to Sealed Transcripts, 913 F.2d at 96.  With respect to those documents that were before the District Court, a supplemental appendix is unnecessary because this appeal is proceeding on the original record.  We deny the Appellees' motion to strike portions of Pelino's reply brief as unnecessary, as we have considered only those allegations and documents that were before the District Court on appeal.

7