

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-11-2006

# Counterman v. Warren Cty Corr Fac

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1572

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Counterman v. Warren Cty Corr Fac" (2006). *2006 Decisions.* Paper 1278.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1278

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 05-1572

————

CHRISTOPHER COUNTERMAN,
<u>Appellant</u>

v.

WARREN COUNTY CORRECTIONAL FACILITY;
JOHN DOES, CORRECTIONAL OFFICERS 1 THROUGH 20,
IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
BYRON M. FOSTER, WARREN COUNTY CORRECTIONS WARDEN,
IN HIS OFFICIAL CAPACITY; WILLIAM BENSON,
WARREN COUNTY CORRECTIONS DEPUTY WARDEN, IN HIS
OFFICIAL CAPACITY; STEVE MARVIN, WARREN COUNTY
ADMINISTRATOR, IN HIS OFFICIAL CAPACITY;
CORRECTIONS OFFICERS JOHN DOES 11 THROUGH 20,
said names being fictitious, in their individual
and official capacities; ARAMARK, INC.;
MARIE A. DORSHIMER; CECELIA WISEBURN,
in her individual and official capacities;
FRANK MURPHY, in his individual and official capacities;
NICHUA LIACI, in her individual and official capacities;
ERIC JANSEN, in his individual and official capacities;
GREG FARMER, in his individual and official capacities;
HARRY BOWLBY, in his individual and official capacities;
JOHN BORDER, said first name being fictitious, in his individual
and official capacities; KEVIN BERGMAN, in his individual
and official capacities; ELBER BARNES, in his individual and
official capacities; ROBERT ACKERMAN, in his individual and
official capacities; THE COUNTY OF WARREN

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 03-cv-01974)
District Court Judge: Honorable Stanley R. Chesler

———

Argued March 29, 2006

Before: McKEE, BARRY, and VAN ANTWERPEN, <u>Circuit Judges</u>.

(Filed: April 11, 2006)


Christian M. Perrucci (Argued)
Florio, Perrucci & Steinhardt, L.L.C.
235 Frost Avenue
Phillipsburg, NJ 08865
         <u>Counsel for Appellant</u>

Patrick J. Madden (Argued)
Madden, Madden & Del Duca, P.A.
108 Kings Highway East, Suite 200
Haddonfield, NJ 08033
         <u>Counsel for Appellees</u>

———

OPINION OF THE COURT

———

VAN ANTWERPEN, <u>Circuit Judge</u>.

Appellant Christopher J. Counterman asks this Court to reverse the January 27,

2005 Order of the United States District Court for the District of New Jersey granting

summary judgment to Appellees, the Warren County Correctional Facility ("WCCF"),

and several of its employees and officials, on the Eighth Amendment claims he brought

against them under 42 U.S.C. § 1983 for harassment and sexual assault he suffered at the

hands of inmates while incarcerated at WCCF. We find no error, and will affirm.

I

Inasmuch as we write only for the parties, we detail the facts only as necessary to our analysis of Counterman's claims. Counterman was incarcerated at WCCF between March 29, 2002 and September 24, 2002. Starting in June of that period, he was designated a "trustee." Trustee status carried several privileges, including greater freedom within the facility, expanded work experience, and more recreation. Trustee inmates resided in two trustee blocks, designated H and J; a foyer connected the two blocks, and prisoners could generally pass between them freely. Counterman lived on H Block. During his stay there, Counterman endured a number of indignities at the hands of fellow trustee inmates. A group of trustees, including inmates Lombardo, Sutton, Harrington, and others, would strike him (on one occasion chipping a tooth), strip him of his clothes and force him to run the cell block naked, throw garbage cans of hot and cold water at him, rub their genitals on him, and verbally harass him. None of these incidents was reported.

The situation culminated on the evening of August 17, 2002, when Lombardo, Sutton, and Harrington, residents of J Block, waited for Corrections Officer Frank Murphy to leave H Block, then grabbed Counterman and violently dragged him into his cell. There, inmates Ballard, Rodriguez, and Woods held Counterman down on his bed, and turned him on his stomach with his face against the wall. The assailants proceeded to sodomize Counterman using a lotion bottle. Throughout the incident, from the time Lombardo, Sutton, and Harrington set upon him to its conclusion, Counterman resisted

-3-

and yelled for aid. None came. The attack caused a commotion among inmates on H Block, and many gathered at the cell to see what was happening. Afterward, an inmate shut Counterman in his cell, locking him in. Counterman testified at his deposition that he was "banging on the door trying to get an officer to come down and yelling for inmates to go try to get hold of an officer so he could unlock my cell door." Officer Murphy unlocked the door about an hour later, but Counterman did not report the attack at that point. The next day, a fellow inmate reported the assault to officials who then initiated an investigation. Counterman received medical attention that day; he was also moved to another block, and his assailants were placed in isolation. The case was referred to the prosecutor. On August 20, Counterman was returned to H Block.

Counterman alleges that prior to the August 17, 2002 assault, a number of WCCF officials knew that he was a target of harassment and aggression. In particular, he points to deposition testimony of fellow inmate Walter Van Scoten to the effect that Lombardo, Woods, and other inmates boasted to Officer Harry Bowlby about their mistreatment of Counterman, and that Bowlby found the accounts humorous and told Counterman to stand up for himself. Counterman also cites his own testimony in which he related how Officer Cecelia Wiseburn told him that she knew what was going on, and that he had to "fight back."

Counterman argues there were a number of shortcomings in WCCF's policies, procedures, and supervision that led to the attack on him. These include the fact that inmates could pass freely between H and J Blocks, in apparent contravention of WCCF policy, and that officials allowed Trustee Blocks H and J to go unsupervised for as long

as three hours at a time. Counterman also asserts that WCCF, specifically its classification Officer Joseph Border, improperly allowed a known violent inmate, Lombardo, to become a trustee, thereby exposing other trustee inmates to a heightened risk of violence.

On May 2, 2003, Counterman filed a complaint asserting claims under 42 U.S.C. §§ 1983, 1985, and 1988 for deprivation of his Eighth Amendment right to be free from cruel and unusual punishment, as well as state law claims. With leave of Court, he amended the Complaint twice to reach the present configuration of defendants and claims. This appeal concerns only claims against WCCF, Warden Byron M. Foster, Deputy Warden William Benson, and Officers Border, Bowlby, Murphy, and Wiseburn (collectively, "Defendants" or "Appellees"). On November 12, 2004, the defendants moved for summary judgment, which the District Court granted as to all counts on January 27, 2005. This appeal timely followed.

II

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1367; our jurisdiction to review its final Order is founded on 28 U.S.C. § 1291. In exercising plenary review of a grant of summary judgment, we take the evidence in the light most favorable to the non-moving party, determining whether there is any genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). A non-moving plaintiff must produce more than a "mere scintilla" of evidence in support of its claims in order to support a genuine issue of material fact sufficient to survive summary judgment. Advo,

-5-

Inc. v. Phila. Newspapers, Inc., 51 F.3d 1191, 1197 (3d Cir. 1995).

III

Counterman's claims are grounded in the Eighth Amendment proscription of cruel and unusual punishment.  U.S. CONST. amend. VIII.  While "prison officials have a duty to protect prisoners from violence at the hands of other prisoners," injury at the hands of a fellow prisoner itself does not amount to an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 833-34 (1994) (citations and quotations omitted).  Rather, plaintiffs must prove deliberate indifference on the part of correctional officials.  Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837).  Under this standard, "a prison official cannot be found liable . . . for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."  Id. (quoting Farmer, 511 U.S. at 837) (quotations omitted).  Thus, the mere presence of circumstances from which a reasonable person *could* infer "an excessive risk to inmate health or safety" is insufficient; rather, the official must actually make the inference and disregard it.  Id. (citing Farmer, 511 U.S. at 837).

This aspect of the deliberate indifference test is subjective:  that is, it looks to what an official knew; not what she or he should have known.  Id.  Actual knowledge can be proven circumstantially where the general danger was obvious; that is, where "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and where "circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and

-6-

thus must have known about it." Id. (quoting Farmer, 511 U.S. at 842-43). Officials need

not have been certain that the particular harm would *actually* befall a prisoner: the

standard looks to disregard of a known excessive *risk*. Id. On the other hand, our inquiry

into the risk of harm itself, as distinct from the official's knowledge of it, is objective. Id.

at 132 (citing Farmer, 511 U.S. at 846). For purposes of summary judgment, it is

incumbent on the plaintiff to marshal evidence sufficient to raise the inference that a

prison official "knowingly and unreasonably disregarded an objectively intolerable risk of

harm." Farmer, 511 U.S. at 846.

## A

Counterman asserts that because inmates Lombardo and Woods bragged to Officer

Bowlby about beatings and harassment perpetrated against Counterman, Bowlby had the

requisite knowledge for deliberate indifference. However, the portion of the Van Scoten

deposition presented in support of the claim to the District Court does not show the

requisite knowledge of an objectively unacceptable risk. In particular, Van Scoten

testified that one inmate, Lombardo, would "be telling stories what they did to them the

night before" to Officer Bowlby, and that Bowlby would, in turn, laugh and tell

Counterman not to take it, and to stand up for himself. Van Scoten also testified that

Bowlby laughed in response to similar reports from other inmates, including that they had

called him "a punk and a pussy and bitch." As the District Court rightly held, these

would not be sufficient to create a subjective awareness, on Bowlby's part, of an

objectively excessive risk to Counterman's safety.

The inmates' boasts conveyed harassment and unpleasantness; not "an objectively

intolerable risk of harm." While behavior of this sort is patently offensive, knowledge of

it does not lead to the inference that Bowlby *must* have known of an intolerable danger to

Counterman that would evince an Eighth Amendment violation. Nor is it enough that

Bowlby *should have* deduced from this that Counterman or others faced a serious risk.[1]

See Beers-Capitol, 256 F.3d at 138 ("deliberate indifference requires more than evidence

---

[1] Another portion of the Van Scoten deposition might lend more credence to Counterman's position, but Counterman neglected to present it to the District Court. The relevant portion reads:

> Q. . . . [T]here is no doubt in your mind that Inmate Lombardo used to brag about harassing *and beating up on* Mr. Counterman in the presence of Officer Bowlby?
>
> A. Yes.
>
> Q. And . . . Inmate Wood would also brag about beating on Mr. Counterman in the presence of Correctional Officer Bowlby?
>
> * * *
>
> A. Yes.

App. 647 (emphasis added). Counterman's request to consider this testimony notwithstanding, we cannot review summary judgment evidence not before the District Court. See Fassett v. Delta Kappa Epsilon (New York), 807 F.2d 1150, 1165 (3d Cir. 1986) ("The only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court."); Drexel v. Union Prescription Centers, Inc., 582 F.2d 781, 784 n.4 (3d Cir. 1978) ("It is hornbook law that this court generally cannot consider evidence which was not before the court below."). While we have entertained the possibility – but not held – that either Federal Rule of Appellate Procedure 10(e) or some inherent equitable power might afford a basis to supplement an appellate record with evidence not presented below, In re Capital Cities/ABC, Inc., 913 F.2d 89, 96-97 (3d Cir. 1990), such power, if we had it, certainly would not extend to a situation where, as here, a party "accidentally omitted" documents from the district court record, and provides no further explanation. Accordingly, we can only consider what Counterman presented to the District Court, which, as we have concluded, is inadequate to survive summary judgment.

that the defendants *should* have recognized the excessive risk and responded to it"); <u>see also</u> <u>Hansard v. Barrett</u>, 980 F.2d 1059, 1064 (6th Cir. 1992) ("Prisons are often an unpleasant place to live in . . . .").

B

Counterman's claim against Officer Wiseburn fares no better. Counterman testified at his deposition that during a conversation, Wiseburn told him, "Look, I know what is going on. I know what they are doing . . . . You got to fight back." To begin with, it is unclear from Counterman's account of their conversation what Wiseburn thought was "going on." A reasonable jury could not permissibly speculate as to what her statement, as related by Counterman, meant. It does not create a genuine issue of material fact sufficient to endure summary judgment. <u>See</u> <u>Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.</u>, 172 F.3d 238, 254 (3d Cir. 1999) (rejecting "ambiguous allegations and vague inferences that cannot defeat summary judgment."); <u>Shaver v. Independent Stave Co.</u>, 350 F.3d 716, 723 (8th Cir. 2003) (vague testimony insufficient to save claim from summary judgment). Nonetheless, assuming for purposes of summary judgment that Wiseburn knew that Lombardo and others were pushing Counterman around and harassing him, we reach the same result as we did with respect to Officer Bowlby: the evidence does not show that Wiseburn *knew* of, but disregarded, "an objectively intolerable risk of harm."

C

The claim against Officer Murphy fails as well. Apparently preferring Murphy's version of events to his own, Counterman argues that the officer remained at his post on

-9-

H Block throughout the August 17, 2002 attack, even though at his own deposition, Counterman claimed that Murphy left the area after briefly walking through. Accordingly, if Murphy were nearby when Counterman was assaulted, he would have heard Counterman's cries and the general commotion that accompanied the event. His failure to respond might evince deliberate indifference. However, Counterman's own testimony notwithstanding, he neglects to account for Murphy's uncontradicted testimony that he did not hear anything unusual that night. As Appellees point out, Counterman testified that it would be difficult to hear anything from the office where Murphy was stationed; Murphy's testimony is not to the contrary. Thus, the record would not support a reasonable jury in concluding that Murphy was aware of an excessive risk to Counterman's safety.

IV

Counterman next claims that the inmate classification policy at WCCF evinced deliberate indifference to an unreasonable risk of serious injury to him. He argues this on the basis that Corporal Border, WCCF's classification officer, allowed Lombardo to gain trustee status despite "a violent history of assaults against both inmates and police officers." Br. of Appellant, at 24. We agree with the District Court "that WCCF policies and practices in this regard are a far cry from the type of deliberate neglect . . . required to support a deliberate indifference claim." Counterman v. Warren County Corr. Facility, No. 03-cv-1974, slip op. at 36 (D.N.J. Jan. 27, 2005). The weightiest evidence Counterman brings on this head is the opinion of his expert witness on correctional practices; however, his expert's criticisms of WCCF's policies and practices with respect

-10-

to classification evince only negligence, if any misfeasance at all. This is not sufficient to support Counterman's claim of deliberate indifference. See Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 193 n.2 (3d Cir. 2001) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.1999) (negligence insufficient to establish deliberate indifference in context of Eighth Amendment claim predicated on lack of medical care). Counterman also points to Officer Border's deposition testimony that neither the fact that an inmate was a state prisoner, nor that an inmate was charged with a violent crime, would preclude him from gaining trustee status. He appears to argue that these shortcomings in classification policy resulted in improperly according trustee status to Lombardo, who assaulted him. Notwithstanding Lombardo's less-than-saintly record, we can discern no conscious disregard of an unacceptable risk to inmates from either the policy, or allowing Lombardo to gain trustee status.

V

Counterman next claims that it was error for the District Court to grant summary judgment to Wardens Foster and Benson on his supervisory deliberate indifference claims against them. Again, we disagree. With respect to supervisory liability for Eighth Amendment claims, plaintiffs must first identify a "specific supervisory practice or procedure" that the defendant supervisor failed to employ, and then prove the following: "(1) the existing custom and practice without that specific practice or procedure created an unreasonable risk . . ." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989); "(2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." Beers-

-11-

Capitol, 256 F.3d at 134 (citing Sample, 885 F.2d at 1118). The simplest way for a plaintiff to make out such a claim is to demonstrate a supervisor's failure to respond appropriately when confronted by a pattern of injuries similar to the plaintiff's, thereby suggesting deliberate indifference on the part of the supervisor. Sample, 885 F.2d at 1118. However, "there are situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." Id.

Counterman specifically argues that Foster knew of Lombardo's record of violence when he was assigned to the trustee block, and that both Foster and Benson acquiesced in leaving the trustee blocks unsupervised for long periods of time, up to three hours. Counterman makes much of Lombardo's spotted history at WCCF. We do not discern in the record a pattern of violence sufficient to evince a actual knowledge of a substantial risk to safety. The practice of leaving the trustee blocks unattended does not appear to have given rise to a pattern of violence among inmates. Furthermore, given that there were procedures for screening inmates for suitability as trustees, it was not so obviously dangerous to leave the block unsupervised as to raise the inference that Foster or Benson must have known that it exposed prisoners to an excessive risk. See Sample, 885 F.2d at 1117 (citing City of Canton v. Harris, 489 U.S. 378, 392 (1989), which noted that plaintiffs can almost always "point to something [that] 'could have been done' to prevent the unfortunate incident," but key is to establish deliberate indifference). At most, Counterman has established negligence.

-12-

## VI

Counterman finally claims that the District Court erred by granting summary judgment to WCCF as a municipal entity on his claims that by its policies and procedures (1) inmates were left unsupervised; (2) officials improperly classified inmates; (3) inmates were permitted to intermingle between the two trustee blocks; and (4) officials did not respond to "reports of [his] repeated physical and sexual abuse at the hands of his fellow inmates." Br. of Appellant at 27. With the exception of (3), these are all wrongs that we have addressed above, and found not to amount to violations of Eighth Amendment proportions. As for the claim that allowing trustee inmates to mingle between the two trustee blocks, this claim, like the others, does not succeed. While the intermingling may have had something to do with the tribulations Counterman faced as an inmate, he does not point to evidence in the record that shows awareness that WCCF policy or practice created an unacceptable risk of their occurrence.

## VII

While we note our sympathy and outrage for the harrowing events Mr. Counterman suffered while an inmate at WCCF, he lacks a basis for his Eighth Amendment claims. At best, he has shown no more than negligence, which, unfortunately, does not suffice where the deliberate indifference standard applies.

For the foregoing reasons, we will affirm the Order of the District Court granting summary judgment to the Defendants-Appellees.