PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2431
_____

NORTH JERSEY MEDIA GROUP INC, Publishers of
Northjersey.com as well as The Record and The Herald
News; BLOOMBERG LP, The owner and operator of
Bloomberg News; NBCUNIVERSAL MEDIA LLC, doing
business as WNBC TV CHANNEL 4; THE NEW YORK
TIMES COMPANY; NEW JERSEY ADVANCED MEDIA,
Publishers of NJ.com; DOW JONES & COMPANY, INC.,
The publisher of the Wall Street Journal; THE
ASSOCIATED PRESS; PUBLIC MEDIA NJ, INC, doing
business as NJTV; NEW YORK PUBLIC RADIO;
AMERICAN BROADCASTING COMPANIES, INC.;
PHILADELPHIA MEDIA NETWORK, PBC; POLITICO

v.

UNITED STATES OF AMERICA; WILLIAM E. BARONI,
JR.; BRIDGET ANNE KELLY; THE PORT AUTHORITY
OF NEW YORK AND NEW JERSEY


JOHN DOE,
                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-16-cv-267)
District Judge:  Hon. Susan D. Wigenton
_____


Argued
June 6, 2016


Before:   AMBRO, JORDAN, and SCIRICA, *Circuit Judges*.


(Filed                    )
_____


Jenny R. Kramer   [ARGUED]
Chadbourne & Parke
1301 Avenue of the Americas
New York, NY   10019
        *Counsel for Intervenor-Appellant, John Doe*

Bruce S. Rosen   [ARGUED]
McCusker Anselmi Rosen & Carvelli
210 Park Avenue – Ste. 301
Florham Park, NJ   07932
        *Counsel for Appellees, North Jersey Media Group Inc.,*
        *Bloomberg LP, NBC Universal Media LLC,*
        *DBA WNBC TV Ch 4, New York Times Co.,*
        *Dow Jones & Co. Inc., Associated Press,*
        *Public Media NJ Inc., DBA NJTV, New York*
        *Public Radio, American Broadcasting Co. Inc.,*
        *Politico,and Philadelphia Media Network PBC*

Lee M. Cortes, Jr.
Mark E. Coyne
David W. Feder
Paul J. Fishman   [ARGUED]
J. Fortier Imbert
Vikas Khanna
Office of United States Attorney
970 Broad Street – Rm. 700
Newark, NJ   07102
        *Counsel for Appellee, United States of America*

Michael A. Baldassare
Dillon H. Malar
Jennifer Mara
Badlassare & Mara
570 Broad St. – Ste. 900
Newark, NJ   07102
        *Counsel for Defendant, William E. Baroni, Jr.*

Michael D. Critchley
Critchley Kinum & Vazquez
75 Livingston Avenue – 3rd Fl.
Roseland, NJ   07068
        *Counsel for Defendant, Bridget Anne Kelly*

David R. Kromm
Port Authority of New York & New Jersey
4 World Trade Center
150 Greenwich St.
New York, NY   10007
        *Counsel for Defendant, Port Authority
        of New York and New Jersey*

_____

JORDAN, *Circuit Judge*.

For five days in September 2013, lane closures on the George Washington Bridge caused extraordinary traffic jams in Fort Lee, New Jersey. The closures were allegedly orchestrated as revenge against the Mayor of Fort Lee for his refusal to endorse New Jersey Governor Christopher J. Christie in the Governor's bid for reelection. Political and legal consequences of the supposed retaliation have been extensively covered in local and national media, and, as if by some public reflex, the scandal has acquired a name with a "-gate" suffix, being widely known as "Bridgegate."

This appeal concerns the efforts of a "John Doe" to avoid being publicly identified as an unindicted co-conspirator in the criminal case that federal prosecutors have brought against certain New Jersey government officials involved in Bridgegate. A consortium of media groups took legal steps to force the disclosure of a letter, authored by one of the prosecutors, that purportedly identifies unindicted co-conspirators, and the District Court ordered the letter to be disclosed. Doe intervened and sought to block public access to the letter. The Court denied his request and again ordered that it be disclosed. Doe appealed, and we granted an emergency motion for a stay and for expedited consideration of this appeal.

Although the appeal arises out of a matter of high public interest, the issue presented is basic and undramatic. We must decide whether the letter is more akin to a bill of

particulars or to a discovery disclosure in a criminal case. That distinction is dispositive, because the former is subject to a recognized right of public access while the latter has historically been kept from public view. *See United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985). Because we conclude that the letter in question is a part of the general discovery process, it is not subject to any First Amendment or common law right of public access, and we will vacate the District Court's order insofar as it requires the letter to be publicly disclosed.

## I. BACKGROUND

On April 23, 2015, a grand jury returned a nine-count indictment against William E. Baroni Jr. and Bridget Anne Kelly based on the Bridgegate political payback scheme. *See United States v. Baroni*, No. 15-cr-193 (D.N.J. filed Apr. 23, 2015).[1] With the exception of Count 9, the indictment alleges that Baroni and Kelly committed their offenses with unidentified "others." The only other individual identified by name in that indictment is David Wildstein, who has already pled guilty in a separate criminal case to two charges arising from Bridgegate. *See United States v. Wildstein*, No. 15-cr-209 (D.N.J. filed May 1, 2015). Wildstein is awaiting sentencing. The charges against Baroni and Kelly are still pending.

---

[1] The indictment charged Baroni and Kelly with conspiracy to misapply and the misapplication of government property (Counts 1 and 2), conspiracy to commit and the commission of wire fraud (Counts 3 through 7), and conspiracy against and the deprivation of civil rights (Counts 8 and 9).

Following their indictment, Baroni and Kelly filed omnibus motions for discovery of certain information.[2] They also filed motions for a bill of particulars,[3] seeking the identity of the unindicted co-conspirators referenced as "others" in the indictment. Specifically, Kelly asked that the government be ordered to provide "the identities of any and all undisclosed or unindicted co-conspirators, aiders and abettors, and/or any other individuals involved in any and all alleged criminal activity." (A-107.) Baroni likewise sought the identity "of all unindicted co-conspirators," as well as "the names of the 'others' referred to in the Indictment." (A-115.)

The government opposed those requests. It argued that the motions for a bill of particulars should be denied because voluminous discovery and the detailed indictment had already given the defendants more than enough information about the criminal charges to allow them to prepare a defense. In the government's view, the defendants were "ask[ing] the United

---

[2] Discovery in the Baroni and Kelly criminal matter is subject to a protective order. The protective order applies to "confidential discovery materials," which includes (among other things) "information of a personal nature." Order Granting Motion for Protective Order at 1, *United States v. Baroni*, No. 15-cr-193 (D.N.J. Jul. 7, 2015), ECF No. 22.

[3] A "bill of particulars" is "[a] formal, detailed statement of the claims or charges brought by a plaintiff or a prosecutor, usu[ally] filed in response to the defendant's request for a more specific complaint." *Black's Law Dictionary* (10th ed. 2014).

States to reveal much of its trial strategy and prematurely commit to specific evidentiary proofs." (A-136.) Nevertheless, the government said that it would, "in a document to be filed under seal, identify any other individual about whom [it] has sufficient evidence to designate as having joined the conspiracy." (A-141.)

On January 11, 2016, as promised, the government produced to the defendants the "Conspirator Letter," revealing the names of any individuals the government regarded as having joined the conspiracy. At the same time, while it did not make a formal motion to seal the Letter, the government sent a copy to the chambers of the judge presiding in the case and "ask[ed] the Court to permanently shield its disclosure from public view given the 'sensitive nature' of the information contained therein." (A-148.)[4] The Letter was not, it seems, ever filed with the Clerk of the District Court. The day after submission of the Conspirator Letter, Baroni objected to its being sealed and the manner in which the government had submitted it to the Court.

The government filed a response to Baroni's objection. In requesting that the Conspirator Letter be kept under seal, the government cited a set of Department of Justice instructions called the "U.S. Attorney's Manual," which directs prosecutors to "avoid unnecessary public references to wrongdoing by uncharged third-parties." (A-150.) While it thus justified maintaining the Letter's secrecy, the government at the same time recognized that the Court might

---

[4] This description is taken from a letter filed by Baroni's attorney on January 12, 2016, objecting to the government's request to the Court.

later be required to rule on a request for public disclosure. "As is always the case," the government said, "if Baroni, Kelly, or the [g]overnment articulates a sufficient reason for unsealing [the Letter] at any point in the prosecution, the Court then will address that issue." (A-151.) The government summed up its position by saying, "[o]ur request that the Court maintain the [g]overnment's letter and its contents under seal is consistent with departmental guidance, decisional law, and the common sense proposition that publicizing allegations of wrongdoing by uncharged third parties should be avoided." (A-152.)

The District Court never issued an order directing the government to file a bill of particulars. After the Conspirator Letter was provided to the defense, a hearing was held to address any lingering issues from the omnibus motions. Baroni's counsel indicated that his request for information about unindicted co-conspirators was "still alive, but because of other motions that are pending, [he could not] talk about it [at that time]." (A-166.) The Court noted that it did not need to rule on any motions "unless [the parties] ha[d] an issue going forward." (A-165.) No further discussion was dedicated to the subject. Immediately after the hearing, the District Court issued an order granting additional relief on the defendants' various motions, but it also ordered "that the remainder of [d]efendants' Discovery Motions" – which included the motions for a bill of particulars – "are **DISMISSED AS MOOT** as per counsels' representations and the discussion on the record." (A-184 (original emphasis).)

Meanwhile, "[s]hortly after the [g]overnment represented that it would produce the Conspirator Letter to

the defendants, the media began reporting about" its existence. (Opening Br. at 10.) On January 13, 2016 – two days after the government gave the Letter to the defendants – a consortium of news organizations (collectively, "the Media")[5] filed a motion to intervene in the criminal case and for access to the Letter.[6] Among other things, the Media sought "[t]he [g]overnment's response to a Motion for a Bill of Particulars, including a list of unindicted co-conspirators emailed to the Court and Defense counsel on January 11, 2016." Notice of Motion to Intervene and for Other Relief at 2, *N. Jersey Media Grp. Inc. v. United States*, No. 16-cv-267 (D.N.J. Jan. 13, 2016), ECF No. 1.

The government, consistent with its request that the Letter be maintained under seal, did not oppose the Media's intervention but did oppose any disclosure of the Conspirator Letter, arguing that "public disclosure of the information

---

[5] Those organizations include: North Jersey Media Group Inc., publishers of Northjersey.com as well as The Record and The Herald News; Bloomberg L.P., the owner and operator of Bloomberg News; NBCUniversal Media, LLC d/b/a WNBC-TV Channel 4; The New York Times Company; New Jersey Advance Media, publishers of nj.com; Dow Jones & Company, Inc., the publisher of The Wall Street Journal; the Associated Press; Public Media NJ, Inc. d/b/a NJTV; New York Public Radio; American Broadcasting Companies, Inc.; Philadelphia Media network; PBC; and the website Politico.

[6] The Media's motion to intervene in the criminal case was then assigned a separate civil action number, under which the case has proceeded since that time.

contained in the [C]onspirator Letter is unwarranted at this phase of the prosecution." (A-187.) It recognized that "evidence relating to even uncharged coconspirators may take on significance at a conspiracy trial." (A-188.) For example, the identity of unindicted co-conspirators could become relevant at trial "if the [g]overnment moves for the admission of an out-of-court statement made in furtherance of the conspiracy by an unindicted coconspirator under Federal Rule of Evidence 801(d)(2)(E)." (A-188.) But, absent the need for such a disclosure of unindicted co-conspirators, the government asserted that the Conspirator Letter "has no evidentiary value" (A-188), and that "Department of Justice policy directs federal prosecutors to avoid unnecessary public references to wrongdoing by uncharged third parties." (A-189.) According to the government, the Letter was "communicated to [d]efendants only for purposes of trial preparation" and, unlike a formal bill of particulars, had "no adjudicatory significance at this point." (A-193.) In recognition of the rights of the unindicted co-conspirators themselves, the government emphasized that they are not charged and so "have no opportunity to challenge that potentially injurious designation in court." (A-189.)

On May 10, 2016, the District Court granted the Media's motion and ordered the disclosure of the Conspirator Letter. *See N. Jersey Media Grp. v. United States*, No. 16-cv-267, 2016 WL 2660104 (D.N.J. May 10, 2016). It reasoned that the Letter was equivalent to a bill of particulars, to which a right of access has historically attached. *Id*. at *2. The Court then weighed the privacy interests of the unindicted co-conspirators against the public interest in disclosure and concluded that the balance weighed in favor of disclosure. *Id*. at *3. As to the privacy interests, the Court emphasized that

"[t]he underlying events that gave rise to the Indictment have been extensively covered by the media, such that even persons tangentially involved have already been identified and exposed in the press." *Id*. Also, said the Court, individuals "thus far identified" as being involved in Bridgegate have been public employees or appointed officials, so their privacy interests are significantly limited. *Id*. The Court ordered that the Conspirator Letter be disclosed by noon on May 13, 2016.

Then John Doe intervened.[7] He says that, up to that point, he had "relied on the [g]overnment and its obligation under the [U.S. Attorney's Manual] to vindicate his constitutional and reputational rights against being publicly branded a criminal without a forum to contest those accusations." (Opening Br. at 15.) But, after the May 10th order that the Letter be disclosed, he believed the government "was no longer adequately representing his rights, especially in light of its apparent intention not to appeal the court's order." (*Id*.) Doe thus filed his emergency motion to intervene, to proceed anonymously, and to stay the release of the Conspirator Letter. In his motion, he made the same arguments he makes now: that no right of access requires

---

[7] Doe says that he "has not seen and does not have access to the Conspirator Letter." (Opening Br. at 16 n.5.) The government has clarified that Doe's name does, in fact, appear in the letter: "John Doe has standing for purposes of this appeal because the [g]overnment's letter to defense counsel in the criminal case identifies him as an unindicted coconspirator." (United States's Second Letter re: Oral Argument, filed May 20, 2016, at 1.)

disclosure of the Conspirator Letter, and that identifying him as a co-conspirator would violate his due process rights.

The next day, May 13, 2016, the District Court granted Doe's motion to intervene and his request to proceed anonymously, but denied his motion for a stay. *See N. Jersey Media Grp., Inc. v. United States*, No. 16-cv-267, 2016 WL 2771805 (D.N.J. May 13, 2016). It concluded that he had not shown any likelihood of success on the merits of his request that the Conspirator Letter remain sealed. According to the Court, "the Conspirator Letter was submitted … in response to [d]efendants' motions for bills of particulars." (A-34.) A copy was sent to the Court, but "[t]he document was never labeled a courtesy copy, nor has the [g]overnment included th[e] Court in other exchanges of mere discovery material." (*Id*.) As a consequence, the District Court "deemed the Conspirator Letter a judicial record … ." (*Id*.) As to Doe's due process argument, the Court held that any due process interest was satisfied because Doe "ha[d] been heard by th[e] Court" in his request for nondisclosure. (*Id*.)

Doe promptly filed a notice of appeal from the May 10 and May 13 orders. We granted his emergency motion for a stay of the District Court's order pending appeal and for expedited consideration of his case.

## II.   DISCUSSION[8]

The Media has asserted a right of access to the Conspirator Letter under both the First Amendment to the United States Constitution and under common law.  Doe and the government say that, on this record, there is no such right.[9]

---

[8] The District Court had jurisdiction under 28 U.S.C. § 1331; we exercise jurisdiction pursuant to 28 U.S.C. § 1291.

[9] The Media also make two "waiver" arguments, which warrant little comment.  First, they claim that "Doe is barred from arguing for the first time on appeal that this matter is not governed by this Court's decision in *Smith*" because he did not raise that argument below.  (Media Answering Br. at 46.)  In fact, Doe made that exact argument below.  He first argued that "the Conspirator Letter is *not* a bill of particulars or any other judicial filing to which the public's presumptive right of access attaches; rather, it is nothing more than a discovery letter that should have been sent to the criminal defendants without being filed."  (District Ct. Docket, No. 37-1 at 9 (original emphasis).)  Directly after that sentence, Doe used a "*compare*" signal to cite *Smith*, a case described in greater detail herein.  Doe emphasized that the district court in that case, unlike here, had "granted the criminal defendants motion for a bill of particulars" and the responsive document had been filed with the Clerk of that Court.  (*Id*.)  In both distinguishing *Smith* and arguing that the Conspirator Letter is a discovery response rather than a bill of particulars, Doe raised the precise issue we now address.  Second, the Media argues that "the [g]overnment should be

## A.  The First Amendment Right of Access[10]

In *Richmond Newspapers, Inc. v. Virginia*, the Supreme Court held that the First Amendment guarantees the public, and thus the press, a right of access to criminal proceedings. 448 U.S. 555 (1980). That right of access can include documents involved in the proceedings. *See Smith*, 776 F.2d at 1111-12. Assessing the right of access "requires

estopped from adopting new arguments it failed to raise below." (Media Sur-Reply Br. at 1.) Any such arguments – even assuming that the government did not advance them below and that estoppel might apply – are properly before us anyway, since Doe has advanced them consistently throughout this litigation.

[10] In general, decisions to seal documents related to judicial proceedings are subject to review for an abuse of discretion. *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). In the First Amendment context, however, a right of access claim is subject to "substantially broader review." *In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 92 (3d Cir. 1990). "This broader review includes independent consideration of the district court's order and the factual findings inferred from the evidence before it." *Id*. "In the First Amendment context … the Supreme Court has recognized the duty of reviewing courts to engage in an independent factual review of the full record. Thus we have explained that when we address a right of access claim, our scope of review is substantially broader than that for abuse of discretion." *United States v. Antar*, 38 F.3d 1348, 1357 (3d Cir. 1994) (internal citation and footnote omitted).

a two-prong evaluation of 'whether the place and process have historically been open to the press' and 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *PG Pub. Co. v. Aichele*, 705 F.3d 91, 104 (3d Cir. 2013) (quoting *Press-Enterprise Co. v. Superior Court of Cal. for Riverside Cty.*, 478 U.S. 1, 8 (1986)). The first part of that test – generally referred to as the "experience" prong – calls for, as the Court noted, a consideration of whether there has been a tradition of opening to the press the matter in question. *United States v. Wecht*, 537 F.3d 222, 233-34 (3d Cir. 2008). The second part – called the "logic" prong – considers whether public access plays a positive role in the judicial process by, *inter alia*, "enhancing both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Id*. (internal quotation marks omitted). "Where both prongs of the test are satisfied, a qualified First Amendment right of public access attaches." *Aichele*, 705 F.3d at 104 (internal quotation marks omitted). If that right attaches, it gives rise to a strong presumption of access, which "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise*, 478 U.S. at 9 (internal quotation marks omitted).

As to the "experience" prong, the Media argue that the Conspirator Letter is akin to a bill of particulars to which the right of access would unquestionably attach. They are right that our precedent does grant public access to bills of particulars, *see Smith*, 776 F.2d at 1112 ("[A]ccess to bills of particulars is protected by the First Amendment."), but the term "bill of particulars" does not cover each and every document that provides additional information about a

criminal charge. A bill of particulars is of a specific nature, and its status has legal consequences. As earlier noted, *supra* note 3, "[a] bill of particulars is a formal written statement by the prosecutor providing details of the charges against the defendant." 1 Fed. Prac. & Proc. Crim. § 130 (4th ed. 2016). It effectively narrows the government's case at trial in the same way as the formal charging document: "there can be no variance between the notice given in a bill of particulars and the evidence at trial." *Smith*, 776 F.2d at 1111; *see also United States v. Murray*, 297 F.2d 812, 819 (2d Cir. 1962) ("[T]he government is strictly limited to proving what it has set forth in [a bill of particulars]."). In many instances, a bill of particulars provides information that ought to have been in the indictment in the first place and so protects the defendant by "preclud[ing] double jeopardy," shielding the defendant from a second trial for the same acts. *United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991); *see also United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005).

Doe and the government take the position that the Conspirator Letter is not a bill of particulars at all but is instead an item of pretrial discovery, to which the First Amendment right of access has not historically been applied. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."). "With respect to experience, there is no tradition of access to criminal discovery. To the contrary, discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation." *United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) (internal quotation marks omitted); *see also United*

*States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Historically, discovery materials were not available to the public or press.").[11]

This difference of opinion over the character of the Conspirator Letter is no mere battle over labels. It is the issue that, at least on the constitutional point, decides this case. Determining whether the Conspirator Letter is the sort of document that would historically have been available to the public, and thus would satisfy the "experience" prong of the First Amendment inquiry, turns on whether it is more properly thought of as discovery material or as a bill of particulars.

Our opinion in *United States v. Smith* is our only previous effort to grapple with a pretrial request for public disclosure of unindicted co-conspirator information at a similar stage in a criminal prosecution. 776 F.2d at 1112. Although *Smith* ultimately concluded that the document at issue there should not be disclosed, it nonetheless held that both the First Amendment and common law rights of access apply to bills of particulars. *Id*. at 1112-13. The defendants in that case moved for a bill of particulars on various issues, including a request for the names of unindicted co-conspirators. *Id*. at 1105. Unlike here, the district court in *Smith* actually granted the motion and ordered that the government provide a bill of particulars listing the names of unindicted co-conspirators. *See id*. at 1105-06. Also unlike

---

[11] *See also United States v. Benzer*, No. 2:13-cr-18, 2015 WL 9200365, at *4 (D. Nev. Dec. 15, 2015) (collecting authorities concluding that there is "no traditional right of access to pretrial discovery").

here, the government formally "filed [that] list of names in response to th[e] order and the Clerk placed the document under seal." *Id*. at 1106. Two newspapers then intervened and moved to unseal the list.

Under those circumstances, we considered the list to be a bill of particulars and we held that the First Amendment right of access applied. We first emphasized the importance of ensuring the public's access to the charging documents in a criminal case:

> Th[e] historic tradition of public access to the charging document in a criminal case reflects the importance of its role in the criminal trial process and the public's interest in knowing its contents. It sets forth the charge or charges to be tried and … thereby establishes the general parameters of the government's case. Knowledge of the charge or charges is essential to an understanding of the trial, essential to an evaluation of the performance of counsel and the court, and, most importantly, essential to an appraisal of the fairness of the criminal process to the accused.

*Id*. at 1112. We then noted that, "[h]istorically and functionally, the bill of particulars is closely related to the indictment." *Id*. at 1111. Bills of particulars are regarded as "supplements to the indictment rather than as pretrial discovery." *Id*. "[I]mportantly, a bill of particulars, like the indictment, is designed to define and limit the government's case. As with the indictment, there can be no variance between the notice given in a bill of particulars and the

evidence at trial." *Id*. In short, a public right of access attaches to a bill of particulars because the bill serves the same purpose and has the same legal effect as a charging document, to which the right of access unquestionably attaches. The very function it serves – as a supplement to the indictment – is what suggests generally open access to it.[12]

Here, for at least four reasons, the Conspirator Letter does not share the attributes of a bill of particulars and so stands in contrast to the document in *Smith*. First, the government did not treat it as a bill of particulars. In the government's words, it "conceptualized and treated the Letter as a vehicle for voluntarily delivering discovery to [d]efendants rather than as a formal bill of particulars that was ordered by the District Court. Indeed, the [g]overnment objected strongly to [d]efendants' request for a bill of particulars in its opposition to [d]efendants' discovery motions." (USA Answering Br. at 13.) When the defendants moved for a bill of particulars, the government outlined – in great detail[13] – why such a binding document is unnecessary in this case.

---

[12] In the end, *Smith* determined that the list should remain sealed to protect the named persons' reputation and privacy interests. 776 F.2d at 1113-15. We need not weigh the public and private interests at stake in this case, however, because – unlike in *Smith* – we conclude that there is no presumptive right of access to the document in question.

[13] The government's response to the motions for bills of particulars included a section entitled: "Defendants' motions for bills of particulars should be denied." (A-136.) In that section, the government argued extensively that a bill

We recognize that the government may have avoided this entire dispute by stating, when it gave the Letter, that doing so was a matter of discovery and not a response to the request for a bill of particulars. It did not do that.[14] But,

---

of particulars was not required, correctly citing the standards for determining whether a bill of particulars was necessary. It summarized its argument as follows:

> The circumstances of this case obviate the professed need for additional clarity with respect to the allegations in the Indictment. Count One of the Indictment is 26 pages long, and provides a wealth of detailed information about the nature of the charged conspiracy and [d]efendants' specific roles in carrying out its aims. Moreover, discovery in this case has been extensive, and [d]efendants have had at their disposal for some time documentary evidence that will be used by the [g]overnment to prove its case. Indeed, one of [d]efendants' complaints is that the [g]overnment has provided too much discovery.

(A-139.) It would require a painfully strained reading of that response to regard it as demonstrating the government's acquiescence and agreement to provide the Defendants with the bill of particulars that they were seeking.

[14] The government has conceded in its briefing that it "could have made clearer to the District Court that the [C]onspirator Letter was a discovery letter, not a bill of particulars," and it reiterated that concession at oral argument. (USA Answering Br. at 6 n.2.) We wholeheartedly agree. In

despite that failing, more than is present on this record is needed to persuade us that the Conspirator Letter was actually (and unbeknownst to the government) a bill of particulars, when the prosecutors believed and stated that they were agreeing only to share a limited set of information, the sort of "informal correspondence" that is regularly "communicat[ed] between the parties" to a criminal case in fulfillment of discovery obligations. (A-186.) The government was willing to give the Conspirator Letter to the defendants to assist them in trial preparation, but it was not bargaining for the constraints that would be triggered by the filing of a bill of particulars.[15] Of course, the government cannot avoid the

---

fact, it muddied the waters by citing a portion of the U.S. Attorney's Manual that said, "[w]ith respect to bills of particulars that identify unindicted co-conspirators, prosecutors generally should seek leave to file such documents under seal." (A-192-93.) While we disagree with the District Court's conclusion about the status of the Conspirator Letter, the government certainly should have been more explicit at the time of the disclosure that it was providing the letter as discovery material only and that it did not intend the letter to function as a bill of particulars.

[15] There are legitimate reasons why the defendants would want to know whom the government considered unindicted co-conspirators to be, even if the information did not serve the function of a bill of particulars. For example, during a trial, the government could potentially try to admit into evidence any co-conspirator statements under the hearsay exception in Federal Rule of Evidence 801(d)(2)(E). The defendants would therefore be well-served to know whose statements might be used against them. Similarly, each

legal consequences associated with a bill of particulars merely by calling the document something else, but its understanding of the character of its own filing is significant. Here, that understanding was that the Conspirator Letter was nothing more than discovery material.

The second reason for concluding that the Letter is no bill of particulars is that, prior to the Media's motion for access, the District Court did not treat it as such. The Court did not characterize the Conspirator Letter as a bill of particulars at the time it was turned over, and never ordered the government to file a bill of particulars, as occurred in *Smith*.[16]

---

participant in a conspiracy is liable for the actions of co-conspirators when such actions are undertaken in furtherance of the goals of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 645-48 (1946). As a consequence, if the defendants know whom the government regards as a co-conspirator, they also know whose conduct might potentially be attributed to them.

[16] The Media cite a handful of cases in their brief in which the government has provided bills of particulars without court order. *See, e.g.*, *United States v. Cont'l Grp., Inc.*, 456 F. Supp. 704, 707 n.1 (E.D. Pa. 1978) (referring to a "Voluntary Bill of Particulars"). We agree with the Media's contention that a bill of particulars *can* be provided without court order. Even Doe acknowledges that the government can "conced[e] a motion for a bill of particulars and fil[e] that bill." (Doe Reply Br. at 10.) But that only happens with the government's agreement to voluntarily provide a formal bill,

The third reason is that the defendants also did not behave as though they believed the Conspirator Letter served as a bill of particulars. One would have expected them to insist on the filing of the Conspirator Letter, if it were to be treated as a bill of particulars, yet the Conspirator Letter was never filed with the Clerk.[17] It was emailed directly to the District Court judge because of the government's understandable desire "to protect the sensitive information contained in the [C]onspirator Letter by asking the District Court to seal it." (USA Answering Br. at 15.)

Fourth and finally, the Conspirator Letter simply does not serve the purpose of a bill of particulars. That purpose is

---

which we would expect would be signaled by styling the document as such.

[17] According to Federal Rule of Criminal Procedure 7(f), "[t]he court may direct the government to file a bill of particulars." In *Smith*, we noted that Rule 7(f)'s reference to the government's need to "file" a bill of particulars weighed in favor of treating it as a supplement to the indictment rather than pretrial discovery, since Federal Rule of Criminal Procedure 16 provides that discovery need only be disclosed directly to the defendant in a criminal case. 776 F.2d at 1111.

Federal Rule of Criminal Procedure 49(d) states that filings in criminal actions are governed by Federal Rule of Civil Procedure 5(d)(2), which states: "A paper is filed by delivering it: (A) to the clerk; or (B) to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk." Neither happened here.

to fill in the holes in an indictment when "the indictment itself is too vague and indefinite … to inform the defendant of the nature of the charges brought against him." *United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012) (internal citations and quotation marks omitted). The rules of criminal procedure require an indictment to be concise. *Id.* The need for concision, though, does not excuse the omission of information necessary to inform defendants of the charges against them and to safeguard their rights against double jeopardy. A bill of particulars can fix such flaws. The indictment in this case, however, did not require that kind of repair. On the contrary, the indictment is quite specific, running thirty-six pages and setting out the alleged role of each defendant with specificity. It gives the defendants more than enough information to make them aware of the crimes with which they are charged and allows them to prepare a defense. The Media rightly agreed at oral argument that the indictment against Baroni and Kelly is detailed. And that level of detail is the very thing that prevents any credible claim that the defendants needed a bill of particulars.

The dividing line between a bill of particulars and pretrial discovery may not always be clear, but it is in this instance. Despite the Media's protestations, the mere fact that the Conspirator Letter includes information that could also have been included in a bill of particulars does not turn it into one. Nor does the existence of a motion for a bill of particulars mean that all information flowing from the government must be treated as a response to the motion. The legal significance of a bill of particulars – supplementing and narrowing the charging document, and thus affecting the government's case at trial – is not something to be lightly created by implication. As in *Smith*, there may be instances

in which an indictment charging a conspiracy is so overbroad or vaguely drafted that a bill of particulars identifying unindicted co-conspirators is required to allow the defendant to prepare a defense. Considering the detail of this indictment, however, that is not a problem here.

In sum, the Conspirator Letter is not a bill of particulars because the government did not regard it as one, the Court did not order one, the defendants did not behave as though they had received one, and the Letter itself did not serve the purpose of one. The "experience" prong of the First Amendment inquiry thus weighs against applying a presumptive right of access to the Conspirator Letter.

That conclusion suffices to end the First Amendment analysis, but, in the alternative, we note that the second, or "logic," prong of the analysis – whether public access plays a meaningfully positive role in the functioning of the particular process in question – also weighs in Doe's favor. The lack of adjudicatory significance of the Letter is manifest in two ways. First, as just discussed, it is not needed to address any shortcomings in the indictment and so to avoid unfairness in the criminal proceedings. Second, the document – at least at this stage of the proceedings – has no evidentiary significance. The government rightly acknowledges that there may come a point when the information in the Letter becomes important, but it is speculative to say it ever will, and a chance of significance is not the same as significance.

"Information wants to be free" is, in some quarters, a popular slogan, but there are dangers to the administration of justice in too freely granting access to information of the sort at issue here. "For one, the purpose of the discovery rules –

to … avoid unnecessary surprise and to level the playing field – might be undermined." *United States v. Smith*, 985 F. Supp. 2d 506, 520 (S.D.N.Y. 2013). "And, because the discovery rules are reciprocal, there is the risk that unfettered public access could jeopardize a defendant's trial strategy." *Id*.

Moreover, were we to apply a right of access in this case, it could stunt future efforts by prosecutors to resolve pretrial discovery disputes and motions practice without having to involve the district courts. The prosecution chose to satisfy Baroni and Kelly's request to know whom the government considered to be co-conspirators. *See supra* note 15. It did so voluntarily, without court order. To now impose a legal obligation on the government to comport its proof at trial with its voluntary submission could well chill similar efforts by the government in the future to moot pretrial motions through voluntary disclosure. That result would be much to the detriment of future defendants, who would probably receive less information in discovery than they currently do and would require judicial resolution of more discovery disputes. The government emphasized those risks at oral argument, and we agree they are real. We therefore conclude that logic weighs against a First Amendment right of access to pretrial discovery materials like the Conspirator Letter.

That leaves for consideration only the Media's claim of a common law right of access to the Letter.

### B.   The Common Law Right of Access[18]

"We have previously recognized a right of access to judicial proceedings and judicial records, and this right of access is beyond dispute." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 780-81 (3d Cir. 1994) (internal quotation marks omitted); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) (recognizing that, in the context of criminal proceedings, the press has a historically-based, common law right of access to judicial records and documents). That right is rooted in common law and predates the Constitution. *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir. 1986). It is, however, narrower than the First Amendment right we have just discussed, being focused on the specific question of "whether [the document at issue] is considered to be a 'judicial record.'" *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). And the answer to that question "depends on whether [the] document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *Id.* A document may also be considered a "judicial record" absent formal filing, in limited circumstances, "if a court interprets or enforces the terms of that document, or requires that it be submitted to the court under seal." *Id.*

In *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, we noted that "[n]umerous other courts have … recognized the principle that the filing of a document gives

---

[18] "We review decisions relating to the common law right of access generally for abuse of discretion, though our review of the legal principles applied is plenary." *Wecht*, 484 F.3d at 208.

rise to a presumptive right of public access." 998 F.2d 157, 161-62 (3d Cir. 1993). The act of filing, in fact, seems to be the most significant consideration, as is evident in situations in which we have previously granted the right of access. For example, we have done so with papers filed in connection with a motion for summary judgment, *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660-62 (3d Cir. 1991), transcripts of civil trials and exhibits admitted at trials, *Littlejohn v. Bic Corp.*, 851 F.2d 673, 678-80 (3d Cir. 1988), and transcripts of a hearing for a preliminary injunction, *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1066 (3d Cir. 1984).

But we have also held that the filing of a document does not, on its own, bring that document within the common law right of access. In *Leucadia*, we said that "there is a presumptive right to public access to all material filed in connection with *nondiscovery* pretrial motions, whether these motions are case dispositive or not, but no such right as to discovery motions and their supporting documents." 998 F.2d at 165 (emphasis added). That case thus recognized the longstanding limitation on the public's access to discovery materials and so limited the common law right of access, even when discovery motions and their supporting documents are filed with the court. A contrary ruling, we noted, "would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands. This would be a holding based more on expediency than principle." *Id.* at 164. Inclusion in a judicial filing, therefore, does not necessarily bring filed discovery materials within the scope of the common law right of access. *See Wecht*, 484 F.3d at 209 ("[D]ocuments filed

with the court are generally subject to the common law right of access, unless attached to a discovery motion.").

Here, it seems, the Conspirator Letter was not filed with the Clerk's Office but was emailed directly to the District Court judge to ensure that the defendants would feel some threat of adverse consequences from the Court if the Letter were leaked to the press.[19]  The government contends that "[t]he mere act of submitting a document to the court as part of a request to seal that same document should not convert the document into a judicial record to which a presumptive right of access attaches."  (USA Answering Br. at 15.)  By the government's lights, "[i]t would be beyond ironic if an act taken to safeguard certain information from premature public disclosure inadvertently triggered the public's right to access that information."  (*Id*. at 16.)

Even accepting, for the moment, the notion that emailing a document directly to a judge, without filing it with the Clerk, can be regarded as a formal "filing," that step was not sufficient to bring the Letter within the common law right of access.  For the reasons we have described at length, the Conspirator Letter is properly categorized as pretrial discovery and thus falls under our holding in *Leucadia*: discovery materials that are part of judicial filings are generally not "judicial records" and do not fall within the common law right of access.  The fact of filing is one point to

---

[19] We question the government's decision to email the Conspirator Letter directly to the judge in lieu of a formal filing.  We do not gainsay the concern that motivated that decision, but permission should have been sought from the District Court first.

consider but it cannot be the sole basis for applying the right of access.

The test is more functional than that. "[T]he issue of whether a document is a judicial record should turn on the use the court has made of it rather than on whether it has found its way into the clerk's file." *Pansy*, 23 F.3d at 783. To be considered a judicial record, to which the common law right of access properly attaches, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). In light of its present lack of adjudicatory significance, the Conspirator Letter plays no part in the judicial function or process. The Letter was intended as an aid to the defense, not as an aid to the judge in rendering a decision or for some other judicial purpose. "The court was merely the passive repository of the letter and needed to do nothing with it" at the time it was submitted. (USA Answering Br. at 15.) The only reason for sending it to the judge was to ensure that it would be protected from public disclosure. We agree with the government that it would be a sad irony if that step – done for the purpose of protecting the document from disclosure – somehow meant that the letter was now unavoidably in the public realm. We therefore hold that the Conspirator Letter is not a judicial record to which the common law right of access attaches.[20]

---

[20] Doe also raises a due process challenge to the disclosure of the Conspirator Letter, but we do not need to consider Doe's due process rights to resolve the instant appeal. *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 301 n.5 (3d Cir. 2007) ("[W]e have

## III. CONCLUSION

Public access to judicial documents and court proceedings is a respected tradition and important legal principle, but it has bounds. "[D]iscovery traditionally has been conducted by the parties in private and has not been publically available." *Wecht*, 484 F.3d at 208. That is so even in a case affected by heightened public interest. The time may come, perhaps at trial, when the information in the Conspirator Letter ought to be made public, but that time is not here yet. Because neither the First Amendment right of access nor the common law right of access applies to the Conspirator Letter, we will vacate the District Court's order insofar as it requires disclosure of the Letter.[21]

---

an obligation not to decide constitutional questions unless necessary."). We thus decline to address that argument. We also will not address the Media's argument about the timeliness of Doe's motion to intervene. The Media contend that Doe "had every chance" to intervene earlier, "but instead sat on his hands" (Media Answering Br. at 14), so his "late application is barred" (*id*. at 43). The utterly undeveloped character of the Media's protestations about the timeliness of intervention means that the argument is waived. *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (Alito, J.) ("[A]rguments raised in passing … are considered waived.").

[21] Doe also appealed from the District Court's order, dated May 13, 2016, denying his request for a stay pending appeal of its order requiring the release of the Conspirator Letter. We will dismiss Doe's appeal of that order as moot, both because we have previously granted Doe's request for a

stay pending appeal and because, by vacating the District Court's underlying order that Doe had sought to stay, there is now no pending prospect that the Conspirator Letter will be released.

In a motion for reconsideration dated May 17, 2016, the Media sought release of the Conspirator Letter with Doe's name redacted. Having concluded that the entire Conspirator Letter is not subject to any public right of access, we discern no basis for the Media's request for its partial disclosure. As we have explained, the Media has no right of access to pretrial discovery, which includes the entirety of the Conspirator Letter. Accordingly, we will deny the Media's motion for reconsideration insofar as it requests a redacted version of the Conspirator Letter.